2002-NMSC-031

55 P.3d 968

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jason DESNOYERS, Defendant–Appellant.**

**No. 26,379.**

Supreme Court of New Mexico.

Sept. 24, 2002.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

FRANCHINI, Justice.

{1} After a jury trial, Defendant Jason Desnoyers was convicted of deliberate intent first degree murder, contrary to NMSA 1978, § 30–2–1(A)(1) (1994); conspiracy to commit first degree murder, contrary to NMSA 1978, § 30–28–2 (1979) and Section 30–2–1; kidnapping, contrary to NMSA 1978, § 30–4–1 (1995); criminal sexual penetration, contrary to NMSA 1978, § 30–9–11 (2001); five counts of tampering with evidence, contrary to NMSA 1978, § 30–22–5 (1963); three counts of conspiracy to commit tampering with evidence, contrary to Section 30–28–2 and Section 30–22–5; and criminal solicitation to commit tampering with evidence, contrary to NMSA 1978, § 30–28–3 (1979) and Section 30–22–5. On appeal, Defendant argues that the trial court erred in its evidentiary and discovery rulings and by not granting his motion for a new trial. Defendant's first

trial ended in a mistrial, and he raises the claim that his right to be free of double jeopardy was violated when he was indicted on additional charges before his second trial. We review the case under Rule 12–102(A)(1) NMRA 2002 (providing for direct appeal to the Supreme Court in cases in which a sentence of life imprisonment has been imposed). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{2} On March 22, 1998, the body of the victim, an eighteen-year-old female student from New Mexico State University, was found in the desert west of Las Cruces, New Mexico. She had been stabbed to death and was wearing only a single sock and a bra which had been pushed up toward her neck. The victim was last seen in the company of Defendant and Jesse Avalos [1], on the evening of January 14, 1998. On January 15, her roommates noticed that the victim was missing and called her parents. Her parents then notified the university that she was missing. Defendant was interviewed on January 19 by police officers and then later by the FBI. In late January, under a search warrant, the police obtained hair, saliva, and blood samples from Defendant. That same day Defendant left New Mexico for San Diego, California. In mid-February, two Las Cruces police detectives and the FBI went to San Diego to interview Defendant again about the evening of January 14, but were unable to locate him. Defendant had relatives in the area, but they told the police that Defendant had not been in touch with them. On February 19, Defendant was indicted for tampering with evidence and solicitation to commit tampering with evidence, and an arrest warrant was issued. The Las Cruces detectives returned to San Diego on March 17, 1998, after Defendant had been arrested on the outstanding warrant by the San Diego sheriff's department. Defendant signed a waiver of his *Miranda* rights and gave a statement to the officers. He returned to Las Cruces with the detectives. After the victim's body was found on March 22, Defendant was indicted for first degree murder and other crimes related to the death of the victim.

{3} At trial, a pathologist from the Office of Medical Investigator (OMI) testified about the autopsy she had performed on the victim. She stated that the cause of death was multiple stab and cutting wounds to the head, neck, chest, and back; the victim had been stabbed at least thirty times. In addition, there were numerous severe blunt wounds to the head. The victim had wounds on her hands consistent with defense injuries. A forensic serology DNA analyst from the Department of Public Safety crime lab testified that the results of DNA testing from the sample taken from under the victim's fingernails were consistent with that of the DNA of Defendant and the victim. He also testified that the blood mixtures found on a black jacket of Defendant's and the shower curtain from Avalos's apartment were consistent with the blood of Defendant, Avalos, and the victim. The jury heard testimony that the seat of Defendant's pickup truck, in which the three had been riding that evening, had been cleaned by Defendant. Testing revealed the presence of blood in the center of the bench seat but because of the cleaning, DNA samples could not be obtained from seat. At the conclusion of the trial, Defendant was convicted of all charges.

## II. DISCUSSION

### A. Admission of Evidence.

#### 1. Statements of Witnesses.

{4} Defendant challenges the admission of testimony of two witnesses who testified about statements made by Defendant and by Avalos. He contends that his constitutional right to counsel and right of confrontation under the United States and New Mexico constitutions [2] were violated by

---

1. This Court has affirmed the convictions of Jesse Avalos for felony murder, kidnapping, criminal sexual penetration, tampering with evidence, and conspiracy to commit tampering with evidence in a separate unpublished decision.

2. Although Defendant refers to the New Mexico Constitution, he does not argue that our state constitution should be interpreted more broadly than the federal in terms of either claim. *See State v. Gomez*, 1997–NMSC–006, ¶¶ 22–23, 122

the admission of the testimony. *See* U.S. Const. amend. VI; N.M. Const. art. II, § 14. He also objects to the trial court's having denied the admission of some statements allegedly made by Avalos about the victim. "As a general matter, we review a trial court's admission of evidence under an exception to the hearsay rule only for an abuse of discretion." *State v. Torres,* 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267; *accord State v. Benavidez,* 1999–NMSC–041, ¶ 2, 128 N.M. 261, 992 P.2d 274; *State v. Gonzales,* 1999–NMSC–033, ¶ 5, 128 N.M. 44, 989 P.2d 419, *cert. denied,* 529 U.S. 1025, 120 S.Ct. 1434, 146 L.Ed.2d 323 (2000). We review de novo the question of whether the Confrontation Clause has been violated by the admission of hearsay evidence. *Gonzales,* 1999–NMSC–033, ¶ 16, 128 N.M. 44, 989 P.2d 419.

### a. Admissions by Defendant.

■ {5} During his first trial, Defendant made incriminating remarks during the course of several conversations with Larry Otero, a prisoner at the Bernalillo County Detention Center where Defendant was being held for the trial. Mr. Otero notified authorities about Defendant's remarks, and the statements were later admitted during Defendant's second trial through the testimony of Mr. Otero. Before the second trial, Defendant attempted to have the statements excluded on the basis that the testimony violated his right to counsel because Mr. Otero was a government agent. This claim was apparently based on the fact that Mr. Otero had been a confidential informant for the narcotics division of Albuquerque Police Department at an earlier time. At the conclusion of an evidentiary hearing on Defendant's motion, the trial court denied the motion, concluding that Mr. Otero was not acting as a confidential informant and was not an agent of the State when he spoke with Defendant.

■ {6} The Sixth Amendment is implicated if the government has elicited statements from an accused after the right to counsel has attached. *Massiah v. United States,* 377 U.S. 201, 205–06, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). To establish a Sixth Amendment violation, the following requirements must be met: (1) the right to counsel had attached at the time of the alleged infringement; (2) the informant was acting as a government agent; and (3) the informant deliberately elicited the incriminating statement from the defendant. *Matteo v. Superintendent,* 171 F.3d 877, 892 (3rd Cir.1999). However, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached." *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).

{7} It is undisputed that Defendant's right to counsel had attached; at the time he met Mr. Otero, Defendant was on trial for the victim's murder. *See Moulton,* 474 U.S. at 170, 106 S.Ct. 477 (stating that the right to counsel attaches when adversarial judicial proceedings have been initiated). The question to be resolved is whether Mr. Otero was acting at the behest of the State when Defendant made the incriminating statements. As Defendant himself acknowledges, there is no evidence in the record that detectives made arrangements with Mr. Otero beforehand to elicit information from Defendant or that he was deliberately placed in the cell next to Defendant. The record shows that Mr. Otero testified at length during the trial and was cross-examined by Defendant about the possible existence of any arrangements and Mr. Otero's motive for testifying. The undisputed testimony at trial was contrary to Defendant's claims. We therefore affirm the trial court's rejection of this claim; the court did not abuse its discretion in finding that Mr. Otero was not a government agent and in admitting his testimony.

### b. Statement against Penal Interest by Avalos.

{8} Defendant also objects to the testimony of another witness, William Marckstadt,

---

N.M. 777, 932 P.2d 1 (describing preservation requirements for a state constitutional claim).

We therefore do not consider these claims.

who came forward after Defendant's first trial. Marckstadt shared a cell with Avalos in the Dona Ana County Detention Center when he heard Avalos make incriminating statements to another group of prisoners about having taken turns with another man in raping and stabbing a female college student. In a pretrial motion, Defendant tried to have these statements excluded, arguing (1) that Mr. Marckstadt was not a reliable witness and (2) the statements were inadmissible hearsay which violated his right to confrontation. The trial court ruled that the statements by Avalos were admissible as statements against penal interest under Rule 11–804(B)(3) NMRA 2002, an exception to the hearsay rule that applies when the declarant is unavailable.

{9} On appeal, Defendant renews the claims that he made to the trial court. First, he contends that the trial court erred in admitting the testimony claiming that Mr. Marckstadt was a jailhouse informant and, therefore, was an inherently unreliable witness. In support of his proposition, Defendant refers us to cases from other jurisdictions. However, those cases are based on statutes which differ significantly from our own, so Defendant's reliance upon them is misplaced. *See State v. Dunsmore*, 119 N.M. 431, 434, 891 P.2d 572, 575 (Ct.App. 1995) (determining that "reliance on law from other jurisdictions is misplaced when those jurisdictions are governed by different statutes"). Even if we were to accept Defendant's characterization of Mr. Marckstadt, we do not agree that the testimony of a fellow prisoner is inherently unreliable. *See State v. Reyes*, 2002–NMSC–024, ¶ 39, 132 N.M. 576, 52 P.3d 948 (recognizing that " 'jailhouse confessions to cellmates are also trustworthy and admissible under Rule 804(b)(3)' ") (quoting *United States v. Westmoreland*, 240 F.3d 618, 628 (7th Cir.2001)). More importantly, as this Court has previously stated, the witness's credibility is irrelevant to the question of the admissibility of Avalos's statement. "The hearsay rule is not concerned with the veracity of the testifying witness." *State v. Toney*, 2002–NMSC–003, ¶ 5, 131 N.M. 558, 40 P.3d 1002; *accord State v. Williams*, 117 N.M. 551, 561, 874 P.2d 12, 22 (1994). Mr. Marckstadt testified

in court; Defendant was afforded an opportunity to test the witness's credibility during cross-examination. He was cross-examined extensively by Defendant about his credibility and about Avalos's statement.

{10} Defendant's second claim of error is that the admission of Avalos's statement through the testimony of Mr. Marckstadt violated his right of confrontation. In general, there is no Confrontation Clause problem in admitting a hearsay statement if the declarant is unavailable and the statement bears adequate indicia of trustworthiness. *Gonzales*, 1999–NMSC–033, ¶ 17, 128 N.M. 44, 989 P.2d 419. Defendant does not challenge the unavailability of Avalos. The requisite indicia of trustworthiness may be found either by determining that the hearsay exception is a firmly rooted one or that the circumstance surrounding the making of the statement "bears adequate indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) (quotation marks omitted). This Court previously has held that the penal interest exception to the hearsay rule is "a firmly rooted hearsay exception for purposes of satisfying the indicia of reliability requirement of the Confrontation Clause." *Torres*, 1998–NMSC–052, ¶ 32, 126 N.M. 477, 971 P.2d 1267; *accord Gonzales,* 1999–NMSC–033, ¶ 19, 128 N.M. 44, 989 P.2d 419. We have subsequently reaffirmed that, in New Mexico, a statement against penal interest within the meaning of Rule 11–804(B)(3) is a firmly rooted exception to the hearsay rule. *Reyes*, 2002–NMSC–024, ¶ 40, 132 N.M. 576, 52 P.3d 948; *Toney*, 2002–NMSC–003, ¶¶ 10–11, 131 N.M. 558, 40 P.3d 1002; *State v. Martinez–Rodriguez*, 2001–NMSC–029, ¶ 27, 131 N.M. 47, 33 P.3d 267, *cert. denied,* — U.S. —, 122 S.Ct. 1317, 152 L.Ed.2d 225 (2002); *Gonzales*, 1999–NMSC–033, ¶ 19, 128 N.M. 44, 989 P.2d 419. The trial court did not err in admitting these statements, and their admission did not violate Defendant's right of confrontation.

{11} In his remaining challenge to the trial court's evidentiary rulings, Defendant argues that the trial court abused its discretion in denying the admission of several

statements attributed to Avalos. During the cross-examination of an acquaintance of Avalos, Defendant asked the trial court for a ruling on whether four statements allegedly made by Avalos in the presence of the witness could be introduced as statements against penal interest. After a proffer by Defendant on the content of the statements, the trial court ruled that only one of the statements would be admissible as a statement against penal interest. The court concluded that the others were not admissible as statements against penal interest, were not relevant, and were not admissible under Rule 11–403 NMRA 2002. At that point, Defendant apparently decided not to pursue the matter and did not question the witness further. On appeal, Defendant does not support this assertion of error with either argument or authority. "We have long held that to present an issue on appeal for review, an appellant must submit argument *and authority* as required by rule." *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984); *accord State v. Hernandez*, 104 N.M. 268, 274, 720 P.2d 303, 309 (Ct.App.1986) ("A contention on appeal is deemed abandoned if appellant fails to cite authority or to explain the claim."). Therefore, we do not address this claim.

### 2. Defendant's Statements to the Police.

{12} Defendant filed a pretrial motion to suppress several statements he had given to the police, arguing that some of the statements were involuntary and that others violated his Sixth Amendment right to counsel because his attorney was not present when he gave them. After an evidentiary hearing and briefing by the parties, the trial court denied the motion. On appeal, Defendant challenges only the admission of the statement given in San Diego. He contends that the trial court erred in its ruling because Defendant's right to counsel under the Sixth Amendment had attached. Defendant also asserts that his waiver of the right to counsel before the interview in San Diego was not valid. Defendant retained an attorney in January, before the filing of any criminal charges. He was indicted on February 17 for one count of tampering with evidence and

one count of solicitation. The police interrogated Defendant on March 17.

{13} At the evidentiary hearing, the State presented evidence from two Las Cruces Police Department detectives who testified about the statements that are being challenged on appeal. The officers testified that after Defendant was arrested on March 17, 1998, they flew that day to California and went to the San Diego Detention Center to interview him, arriving around 5:00 p.m. In accord with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Defendant was advised of his constitutional rights, including the right to remain silent and the right to the presence of an attorney. The detectives stated that they read him his *Miranda* rights at the beginning of the interview and before any conversation began. Defendant told them that he understood his rights, signed a waiver of rights, and said that he would speak with them. The interview with the detectives lasted approximately one and a half hours. They testified that Defendant had been willing to speak with them, understood the discussion, and described his responses as being coherent and cooperative. The detectives testified that Defendant neither indicated that he wanted to speak with an attorney nor asked to make any telephone calls. One of the detectives also testified that he was aware that Defendant had been represented by an attorney earlier in the investigation. When Defendant fled from New Mexico in February, the attorney had been contacted to see if he knew where Defendant had gone and whether he would return voluntarily. At that time, the attorney maintained that he did not know Defendant's whereabouts and had not been in touch with him. One of the detectives testified that Defendant only mentioned speaking with an attorney once when one of the detectives brought up taking a polygraph test. Defendant responded that he would need to speak to his father and an attorney before deciding whether to take the test. Defendant waived extradition and returned to Las Cruces with the detectives on March 20, 1998.

{14} After their return, Defendant voluntarily accompanied the detectives that day to

the mesa region outside the city in an unsuccessful attempt to locate the victim's body. After the search, Defendant asked to speak with his father, which he was permitted to do, but did not ask to speak to an attorney. The following day, when one of the detectives took Defendant to visit his parents, the attorney, in response to a call from one of Defendant's parents, arrived shortly thereafter and asked to speak with Defendant alone. After that meeting, the attorney told the detective, in Defendant's presence, not to have any further conversations with Defendant. When Defendant and the detective returned to the officer's car, Defendant told the detective that he still wanted to help the officers find the victim. They continued the search that afternoon accompanied by a friend of Defendant. The State also presented a recording of a telephone call made by Defendant to his father from the Dona Ana Detention Center [3] in which Defendant assured his father that the San Diego statements were made voluntarily.

▮ {15} Defendant is correct that his Sixth Amendment right to counsel attached once he was indicted, specific to the offenses for which he was charged. *See Texas v. Cobb,* 532 U.S. 162, 163, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001). Thus, Defendant's Sixth Amendment right to counsel attached to the charges of tampering with evidence and solicitation. *See State v. Aragon,* 109 N.M. 632, 635, 788 P.2d 932, 935 (Ct.App. 1990) (stating that the right ordinarily attaches when adversarial judicial proceedings have been initiated, "by way of formal charge, preliminary hearing, indictment, information, or arraignment"). "Once the right to counsel has attached and has been asserted, the state must honor that assertion." *Id.* (relying upon *Moulton,* 474 U.S. at 170, 106 S.Ct. 477); *accord Moran v. Burbine,* 475 U.S. 412, 428, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("It is clear, of course, that, absent a valid waiver, the defendant has the right to the presence of an attorney

during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches.").

{16} In *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), the United States Supreme Court held that if a defendant's Sixth Amendment right to counsel has attached, and if a defendant has asserted the right, the police cannot thereafter initiate an interrogation regarding the specific crimes charged and "any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 S.Ct. 1404.

> *Michigan v. Jackson* thus imposes two requirements for the application of the . . . rule in the Sixth Amendment context. First, the right to counsel must have attached as to the offense in question at the time of the interrogation. Second, the defendant must have asserted the right to counsel at some point after the right attached and before the interrogation began.

*United States v. Avants,* 278 F.3d 510, 515 (5th Cir.2002), *cert. denied,* —— U.S. ——, 122 S.Ct. 2683, 153 L.Ed.2d 854 (2002). We believe the rationale of the United States Supreme Court is instructive:

> Petitioner, however, at no time sought to exercise his right to have counsel present. The fact that petitioner's Sixth Amendment right came into existence with his indictment, i.e., that he had such a right at the time of his questioning, does not distinguish him from the preindictment interrogatee whose right to counsel is in existence and available for his [or her] exercise while he [or she] is questioned. Had Petitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting).

*Patterson v. Illinois,* 487 U.S. 285, 290–91, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988).

---

**3.** One of the detectives testified that there was a sign by the telephone at the detention center that stated that telephones calls would be recorded. He also stated that Defendant had indicated in other telephone calls that he was aware that he was being recorded. *See generally State v. Coya-*

zo, 1997–NMCA–029, ¶ 16, 123 N.M. 200, 936 P.2d 882 (recognizing that monitoring of prison telephones was for security and holding that because the defendant had understood his calls were being monitored, it was proper for the trial court to find consent).

{17} Because Defendant's right attached upon indictment, we first address whether Defendant asserted his Sixth Amendment right. As described above, Defendant did not assert his right to counsel after the right attached and prior to the interrogation. Defendant's decision to retain counsel before he was indicted is not relevant to this Sixth Amendment inquiry. Defendant's Sixth Amendment right to counsel had not attached at the time he obtained counsel, and this right "cannot be invoked once for all future prosecutions for it does not attach until prosecution is commenced." *McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). *"McNeil* forecloses the argument that the Sixth Amendment right to counsel may be invoked before indictment." *United States v. Muick,* 167 F.3d 1162, 1165 (7th Cir.1999). Because Defendant was charged by indictment, Defendant's first opportunity to assert his Sixth Amendment right, like the defendant in *Patterson,* arose at the time that the Las Cruces police sought to interview him in San Diego. Under these circumstances, Defendant was in the same situation as a "preindictment interrogatee whose right to counsel is in existence and available for his [or her] exercise while he [or she] is questioned." *Patterson,* 487 U.S. at 291, 108 S.Ct. 2389.

{18} In *Patterson,* 487 U.S. at 291, 108 S.Ct. 2389 the Supreme Court held that *Jackson* does not

> bar[ ] an accused from making an *initial* election as to whether he [or she] will face the State's officers during questioning with the aid of counsel, or go it alone. If an accused 'knowingly and intelligently' pursues the latter course, we see no reason why the uncounseled statements [the accused] then makes must be excluded at his [or her] trial.

During the interview in San Diego, Defendant did not indicate to the officers that he wished to communicate with them only through counsel. Therefore, we conclude that Defendant did not assert his Sixth Amendment right to counsel. *See United States v. Spruill,* 296 F.3d 580, 587 (7th Cir.2002) (stating that "the assertion of the right by an affirmative request for counsel is a necessary step in Sixth Amendment jurisprudence").

{19} Because we conclude that Defendant did not assert or invoke his attached Sixth Amendment right to counsel on the indicted charges, we must determine whether he validly waived his Sixth Amendment right. *See Patterson,* 487 U.S. at 292, 108 S.Ct. 2389. "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" which must be made in a knowing and voluntary manner. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* "In response to a defendant's motion to suppress a statement made to police during a custodial interrogation, the State must demonstrate by a preponderance of evidence that a defendant knowingly, intelligently, and voluntarily waived his or her constitutional rights under *Miranda." State v. Barrera,* 2001–NMSC–014, ¶ 22, 130 N.M. 227, 22 P.3d 1177. A reviewing court evaluates the totality of circumstances to determine "whether a waiver of rights is knowing, intelligent, and voluntary." *Id.* ¶ 23. The totality of the circumstances tests requires the reviewing court to evaluate the personal characteristics of the accused, including his or her mental and physical condition, background, experience, and conduct, along with the conduct of the police. *State v. Martinez,* 1999–NMSC–018, ¶ 14, 127 N.M. 207, 979 P.2d 718. "As a general matter, . . . an accused who is admonished with the warnings prescribed by this Court in [*Miranda* ] has been sufficiently apprised of the nature of his [or her] Sixth Amendment rights, and of the consequences of abandoning those rights, so that his [or her] waiver on this basis will be considered a knowing and intelligent one." *Patterson,* 487 U.S. at 296, 108 S.Ct. 2389. "[I]t is our view that whatever warnings suffice for *Miranda's* purposes will also be sufficient in the context of postindictment questioning." *Id.* at 298, 108 S.Ct. 2389.

{20} The trial court concluded that Defendant's waiver of his right to counsel was voluntary. We affirm that determination. The record shows that Defendant understood his constitutional rights and the consequences of waiving those rights. In addition to having been advised of them before the interview, he had received explanations of his *Miranda* rights previously on several occasions during the investigation. Defendant was twenty-two years of age and "was, thus, old enough to comprehend *Miranda* warnings and the consequences of waiving his rights." *Martinez,* 1999–NMSC–018, ¶ 22, 127 N.M. 207, 979 P.2d 718 (holding that seventeen-year-old defendant had voluntarily waived his *Miranda* rights). Defendant did not ask to see any attorney before or after receiving his *Miranda* rights, or in any way indicate that he did not want to speak to the detectives during the time they were together from March 17 through March 21. As to the conduct of the officers, the record shows no evidence of coercion or other overreaching on the part of the detectives that would have caused Defendant to waive his right to counsel involuntarily. One of the detectives was known to Defendant, having spoken with him at an earlier stage of the investigation in the victim's death. Defendant makes no claim that threats, promises, or physical abuse were used to compel him to submit to the interview without counsel.

{21} Defendant also appears to argue that the right to counsel had been asserted by his attorney. Notwithstanding Defendant's claims, the constitutional rights to counsel and to remain silent are personal to a defendant. The intent is to protect the rights of a defendant, and he or she may waive that benefit. *See Adams v. United States ex rel. McCann,* 317 U.S. 269, 280, 63 S.Ct. 236, 87 L.Ed. 268 (1942) (holding that the defendant could constitutionally waive the assistance of counsel, the Court recognized that if a defendant were not able to relinquish the right to counsel, the result would be "to imprison a man [or woman] in his privileges and call it the Constitution"). The right may, as a general principle, be waived by the client without notice to or consultation with counsel. *Michigan v. Harvey,* 494 U.S. 344, 353, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) ("Although a defendant may sometimes later regret his [or her] decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his [or her] free will."). A custodial interrogation must cease until an attorney is present only if the individual states that he or she wants an attorney. *Moran,* 475 U.S. at 433 n. 4, 106 S.Ct. 1135; *accord Cobb,* 532 U.S. at 172 n. 2, 121 S.Ct. 1335 ("The Sixth Amendment right to counsel is personal to the defendant and specific to the offense."); *Muick,* 167 F.3d at 1166 ("We are also cognizant of the Supreme Court's holding that only the accused may invoke the *Miranda* right to counsel. This principle alone dictates that the attorney's letter and phone call were insufficient to invoke the *Miranda* right to counsel. Only [the defendant] could invoke his *Miranda* right to counsel.") (citations omitted); *Coyazo,* 1997–NMCA–029, ¶ 20, 123 N.M. 200, 936 P.2d 882 (holding that, although right to counsel had attached to one offense, the incriminating statements about as yet uncharged crimes were admissible, relying upon *Moulton,* 474 U.S. at 180 n. 16, 106 S.Ct. 477 which held that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses)."

{22} We conclude that because a defendant's right to counsel is personal to him, Defendant was free to waive this right although his attorney had instructed the investigating officers not to talk to him. *See Chandler v. State,* 426 So.2d 477, 480 (Ala. Crim.App.1982) ("The fact that a defendant has legal counsel does not, as a per se rule, prohibit law enforcement officials from procuring a statement of any kind from the appellant, without first giving notice to and receiving consent from his counsel."); *Marr v. State,* 134 Md.App. 152, 759 A.2d 327, 338 (Ct.Spec.App.2000) (stating that the defendant's right to counsel was personal to him and he may waive this right although his attorney has instructed the investigating officers not to talk to him), *cert. denied,* 362 Md. 623, 766 A.2d 147 (2001); *State v. Peterson,* 344 N.C. 172, 472 S.E.2d 730, 733–34 (N.C.

1996) (reiterating that because right to counsel is personal to the defendant, he could waive his rights and speak to investigating officers despite his attorney's demand to be present during any interrogation and his telling the officers not to talk to his client); *State v. Hanson,* 136 Wis.2d 195, 401 N.W.2d 771, 778 (1987) ("Since the right to counsel and the right to remain silent are given by the constitution to the defendant, he [or she] alone can exercise those rights."). As Defendant's attorney acknowledged at the evidentiary hearing in this case, the right to counsel was Defendant's right to invoke, not the attorney's. The attorney also stated that he was aware that a defendant can voluntarily waive that right. Although an attorney may advise a defendant, the attorney cannot control the defendant's own exercise of the defendant's constitutional rights. If Defendant's waiver of his right to counsel is otherwise voluntary, knowing, and intelligent, his attorney's wishes to the contrary are irrelevant. Defendant does not argue that his statements should have been suppressed based on the Fifth Amendment right to counsel. We nonetheless note that the personal nature of this right prevents Defendant's counsel's preindictment contacts with authorities from implicating *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We also note that "[t]he Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, even if in anticipation of future custodial interrogation." *United States v. Wyatt,* 179 F.3d 532, 537 (7th Cir.1999) (citation omitted); *accord United States v. Bautista,* 145 F.3d 1140, 1147 (10th Cir.1998) (stating that "in order to implicate the *Miranda–Edwards* right to counsel prophylaxis, both a custodial situation and official interrogation are required").

{23} After reviewing the totality of the circumstances, we conclude that Defendant did not assert his right to counsel but rather waived the right. The waiver was voluntarily, knowingly, and intelligently made. The State showed that Defendant was given his *Miranda* warnings in both written and oral form. Defendant verbally acknowledged that he understood his rights and signed a waiver of rights which indicated that he understood his constitutional rights. In a telephone call to his father several days after the interview, and after speaking with an attorney, Defendant reaffirmed that the statement he gave in San Diego was voluntary. We hold that the trial court properly denied Defendant's motion to suppress.

**B. Discovery.**

■ {24} In a pretrial motion for discovery, Defendant asked that the State be required to obtain information from numerous law enforcement agencies, including the FBI, the DEA, the New Mexico State Police, and several police departments and sheriff's offices, as to whether Mr. Otero and other witnesses might have worked as confidential informants for those agencies. Defendant argued in the discovery request and at the hearing on the motion that he needed the information to use as impeachment evidence to attack Mr. Otero's credibility. The State questioned whether such information even existed. Although the trial court had concluded as a matter of law that Mr. Otero was not a confidential informant in this case, it also stated that if such information existed it might be useful to Defendant for impeachment purposes. The court directed the State to request the information and, if necessary, it would conduct an in camera review of any information the State regarded as sensitive. Before trial, Mr. Otero was made available to Defendant for interviews. At trial, the Court permitted Defendant to question Mr. Otero about matters that related to his credibility as a witness, including his background as a confidential informant, his mental health, his legal difficulties with child support, and any inconsistencies in previous statements.

■ {25} The granting or denial of discovery in a criminal case "is a matter peculiarly within the discretion of the trial court" which we review under an abuse of discretion standard. *State v. Bobbin,* 103 N.M. 375, 377, 707 P.2d 1185, 1187 (Ct.App. 1985). "[C]riminal defendants do not have a constitutional right to discovery." *Id.* at 378, 707 P.2d at 1188 (relying upon *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)); *accord United States v. Ruiz,* —— U.S. ——, ——, 122 S.Ct. 2450,

2455, 153 L.Ed.2d 586 (2002). On appeal, Defendant contends that he was prejudiced because additional discovery about possible dealings Mr. Otero may have had with the government might have been useful in attempting to establish that an agreement existed between Mr. Otero and the State to deliberately elicit information from Defendant. We are not persuaded by this contention for two reasons. First, in his brief Defendant does not indicate that this claim of prejudice was raised with the trial court. The Court will not search the record to see if an issue was preserved when Defendant does not refer the Court to appropriate transcript references. *See* Rule 12–216(A) NMRA 2002; *State v. Rojo,* 1999–NMSC–001, ¶ 44, 126 N.M. 438, 971 P.2d 829. Second, even if we were to accept Defendant's current argument, the question of whether additional discovery "[might] have benefitted the defense is pure speculation." *See Bobbin,* 103 N.M. at 378, 707 P.2d at 1188. As discussed above, Mr. Otero testified about his role as a confidential informant with the Albuquerque police department, and his credibility was challenged repeatedly on this issue during cross-examination. On appeal, Defendant has not made a showing that more information would have helped his defense. The burden is upon the appellant to establish prejudice. *Id.; State v. Perrin,* 93 N.M. 73, 75, 596 P.2d 516, 518 (1979). Defendant having failed to do so, we hold that the trial court did not abuse its discretion in its handling of Defendant's discovery motion.

### C. Motion for a New Trial.

{26} After his conviction, Defendant filed a motion for a new trial, under Rule 5–614 NMRA 2002, on a claim of newly discovered evidence. Motions for new trials on the basis of newly discovered evidence are not encouraged. *State v. Shirley,* 103 N.M. 731, 733, 713 P.2d 1, 3 (Ct.App.1985). The probability of the new evidence changing a verdict is a question "addressed to the sound discretion of the trial court." *Id.* The denial of a motion for a new trial is reviewed on appeal for a "manifest abuse of discretion." *State v. Chavez,* 98 N.M. 682, 683, 652 P.2d 232, 233 (1982) (quoted authority omitted). Denial of a motion for a new trial will only be reversed if the ruling of the trial court is arbitrary, capricious, or beyond reason. *State v. Litteral,* 110 N.M. 138, 144, 793 P.2d 268, 274 (1990). For a motion for a new trial to be granted on the basis of newly discovered evidence, Defendant had the burden of proving that the evidence met all the following six requirements:

> (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory.

*State v. Sosa,* 1997–NMSC–032, ¶ 16, 123 N.M. 564, 943 P.2d 1017 (quoted authority omitted).

{27} Defendant's evidence was presented at a hearing on the motion in which Deborah Innis, a fellow inmate of Mr. Otero's, testified regarding what he had told her about the case. Two officers from the Las Cruces Police Department were also called by Defendant to testify at the hearing. For the most part, their testimony contradicted that of Ms. Innis. At the conclusion of evidence, the trial court stated that it had reservations about the credibility of Ms. Innis' testimony.

{28} In denying Defendant's motion, the trial court stated that new evidence must be material and not merely impeaching or contradictory. *Sosa,* 1997–NMSC–032, ¶ 16, 123 N.M. 564, 943 P.2d 1017. The trial court determined that even if the testimony of Ms. Innis were to be credited, the evidence presented was not material under *State v. Chavez,* 116 N.M. 807, 811–13, 867 P.2d 1189, 1193–95 (Ct.App.1993), which defined the test for materiality as follows:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Id.* at 812, 867 P.2d at 1194 (quoting from *United States v. Bagley,* 473 U.S. 667, 682,

105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)); *accord State v. Fero,* 107 N.M. 369, 371, 758 P.2d 783, 785 (1988) (employing the *Bagley* definition to determine that the alleged newly discovered evidence was not material). On appeal, Defendant, as we understand his argument, is claiming that the trial court erred because the testimony was material. He asserts that if the evidence had been believed by the jury, it would undercut Mr. Otero's testimony that the State had not made a deal with him or provided other assistance in exchange for his testimony. However, this was an issue that Defendant had already explored extensively at trial. One of the requirements for newly discovered evidence is that "it must not be merely impeaching or contradictory." Defendant does not explain how this evidence would "have added anything to the information already before the jury" and would have consequently undermined the outcome. *Chavez,* 116 N.M. at 813, 867 P.2d at 1195. At best, the testimony of Ms. Innis might have challenged the credibility of Mr. Otero, but it had no relevance to Defendant's guilt or innocence.

{29} The trial court concluded that even without Mr. Otero's testimony, there would have been ample evidence remaining to support Defendant's convictions so that the presented evidence would not probably change the result if a new trial were granted. We agree. The court correctly determined that the testimony of Ms. Innis would not have changed the result if a new trial had been granted, and we affirm that decision. The evidence presented by Defendant failed to meet any of the required standards for granting a new trial on the basis of newly discovered evidence. *See Fero,* 107 N.M. at 372, 758 P.2d at 786. The trial court's decision was not arbitrary, capricious, or beyond reason.

{30} Defendant also claims that the trial court abused its discretion by limiting his questioning of a witness during the motion hearing. During direct examination, Defendant asked one of the officers whether Mr. Marckstadt had any medical problems or had previously been a confidential informant in the Las Cruces area. The State objected because this issue had not been raised in Defendant's motion for a new trial. The trial court questioned Defendant about whether notice of the issue had been provided to the State and, upon hearing that Defendant had not done so, sustained the objection. Defendant later made an offer of proof on the evidence stating that it went to the credibility of Mr. Marckstadt; however no allegation was made that Mr. Marckstadt had been a confidential informant when he talked to Avalos in the detention center.

{31} On appeal, Defendant contends the evidence may have shown that Mr. Marckstadt had once served as a confidential informant and, if so, would have affected the jury's view of his credibility. He claims that the trial court abused its discretion in limiting Defendant's questions to the detective. We disagree. The admission of evidence is entrusted to the discretion of the trial court and will not be disturbed absent a showing of abuse of that discretion and that an error in the admission of evidence was prejudicial. *See State v. Jett,* 111 N.M. 309, 312, 805 P.2d 78, 81 (1991). Moreover, it is within the court's discretion to control the order of witnesses, mode of interrogating witnesses, and presentation of evidence. *See* Rule 11–611(A) NMRA 2002. The trial court did not abuse its discretion in not allowing Defendant to pursue an evidentiary issue when he had given no notice to the court or State that he intended to raise the issue. Further, Defendant cannot show that he was prejudiced by the trial court's ruling. Based on Defendant's offer of proof, the alleged newly discovered evidence was "merely impeaching or contradictory" and therefore contrary to the requirements for establishing the kind of newly discovered evidence that would warrant a new trial. *See Chavez,* 116 N.M. at 813, 867 P.2d at 1195 (observing that the offered evidence would have been cumulative of impeachment testimony already offered at trial and "[a]bsent the evidence's impeachment value it could not have any bearing on Defendant's innocence").

### D. Double Jeopardy.

{32} In April 1998, Defendant was indicted in the victim's murder for deliberate intent first degree murder, conspiracy to

commit first degree murder, four counts of tampering with evidence, three counts of conspiracy to commit tampering with evidence, and solicitation to commit tampering with evidence. On July 23, 1999, the jury in Defendant's first trial was unable to reach a verdict, and Defendant moved for a mistrial which the trial court granted as to all charges on the basis of manifest necessity. In August 1999, the State obtained a second indictment against Defendant to include the additional charges of felony murder, kidnapping, and criminal sexual penetration. Defendant filed a motion to dismiss the second indictment that the trial court denied. On appeal, Defendant challenges the second indictment, arguing that charging additional felonies for the same incident in addition to the original charges constitutes double jeopardy. Defendant's claim is without merit.

{33} Defendant is correct that the United States and New Mexico Constitutions both contain double-jeopardy clauses guaranteeing that no person shall be "twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. However, the principles of double jeopardy "do not prohibit retrying a defendant, even over the defendant's objections, after a mistrial that was justified by 'manifest necessity.'" *State v. Reyes–Arreola*, 1999 NMCA 086, ¶ 7, 127 N.M. 528, 984 P.2d 775 (quoting *Arizona v. Washington*, 434 U.S. 497, 505–06, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)). "The classic case of such necessity is a hung jury." *Id.* "It is well established in New Mexico that double jeopardy principles are not implicated when a defendant is brought to trial a second time following a mistrial in which the jury could not reach a verdict on a particular count." *State v. Martinez*, 120 N.M. 677, 678, 905 P.2d 715, 716 (1995) (concluding that there was no double jeopardy violation when the defendant was retried after a hung jury). "The second trial is considered a continuation of the first, and the defendant is thus placed in jeopardy only once." *Id.*

{34} Nor could Defendant have been "twice put in jeopardy" by the second indictment; he had not previously faced those charges. In *State v. Stevens*, 96 N.M. 627, 629–30, 633 P.2d 1225, 1227–28 (1981), this Court determined that the pretrial actions of the prosecutor who filed a series of three indictments, each containing more serious charges against the defendant, were a proper exercise of the charging discretion of the prosecutor. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him [or her] to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *United States v. Goodwin*, 457 U.S. 368, 382, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *see State v. Sena*, 99 N.M. 272, 273, 657 P.2d 128, 129 (1983) (holding that the district attorney, after re-evaluating a case charged as second degree murder, was not precluded from resubmitting the case to the grand jury for indictment as first degree murder). Similarly, we conclude that the prosecutor's obtaining a second indictment with additional charges was correct; the trial court did not err in denying Defendant's motion to dismiss. Moreover, in this case, as in *Stevens*, the indictments "were obtained through a grand jury, which traditionally has afforded some protection against improper prosecutorial activity. The present case presents no indication that the grand jury procedure inadequately protected the defendant." *Stevens*, 96 N.M. at 631, 633 P.2d at 1229.

## III. CONCLUSION

{35} We hold that the trial court did not err in its evidentiary and discovery rulings and acted within its discretion in admitting evidence of the statement against penal interest by the co-defendant and an admission by Defendant. The trial court did not abuse its discretion in denying Defendant's motion to suppress because Defendant did not assert and validly waived his right to counsel before making the statements to the police. The motion for a new trial was properly denied because Defendant's evidence was unlikely to change the trial outcome and thus did not meet the standard for granting a new trial. The indictment on new charges before the second trial was a proper exercise of the charging discretion of the prosecutor and did not implicate the Double Jeopardy Clause.

We affirm Defendant's convictions on all charges.

{36} IT IS SO ORDERED.

WE CONCUR: PATRICIO M. SERNA, Chief Justice, PAMELA B. MINZNER, Justice, and PETRA JIMENEZ MAES, Justice.