This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.                                                            NO.   29,440

JERROD WINDSOR,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
William A. Sanchez, District Judge

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline Cooper, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

A jury convicted Defendant Jerrod Windsor of unlawful issuance of a worthless check, contrary to NMSA 1978, Section 30-36-4 (1963). Defendant appeals, contesting the denial of his motions for a continuance and for a new trial, raising evidentiary issues, and challenging the sufficiency of the evidence. We affirm.

## I.    BACKGROUND

Because this is a memorandum opinion and the parties are familiar with the factual and procedural background, we do not provide a detailed summary herein. The factual information relevant to our conclusions will be discussed in connection with each issue addressed by this Court and is briefly summarized as follows.

Defendant contracted with Brad Hall & Associates (BHA) for the periodic delivery of gas to his gas station. Under the terms of the contract, Defendant was obligated to pay for the gas within ten days of delivery. On March 31, 2006, Defendant wrote check number 4157 to BHA for $20,327.98 to pay BHA's invoice number 782419. When BHA attempted to cash the check, it was returned due to a lack of sufficient funds. After BHA's attempts to obtain payment failed, BHA referred the matter to the police.

## II.    DISCUSSION

Defendant makes five arguments: (1) that the district court erred in denying his motion for a continuance, (2) that there was insufficient evidence to support his conviction, (3) that the court erred in denying his motion for a new trial, (4) that the court abused its discretion in sustaining several of the State's objections at trial, and (5) that the court abused its discretion in admitting a settlement agreement into evidence. We address each argument in turn.

**A.      Denial of the Motion for Continuance**

Defendant first argues that the district court abused its discretion when it denied his request for a continuance in order to obtain Defendant and BHA's banking records. We review the grant or denial of a continuance for abuse of discretion. *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

> There are a number of factors that trial courts should consider in evaluating a motion for continuance, including the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

*Id.* The district court abuses its discretion when "the denial of the motion for continuance does not follow from a logical application of these factors." *Id.*

Defendant filed his motion for continuance on August 15, 2008, one and one half years after he was indicted and twelve days before trial. In it, he claimed that new

3

documents caused him to believe that the check had been paid "in April of 2006, by way of two bank wire transfers." Defendant stated that "additional time is necessary for [Defendant] to obtain [BHA's] full and complete banking records" in order to determine whether BHA received the two wire transfers in question. Defendant asked for a continuance that would transfer his case "from the current docket and to allow this case to proceed to trial on the next trial docket." However, attached to Defendant's motion were various affidavits and filings from a related civil case that showed that Defendant and his expert were already in possession of the Wells Fargo statements.

Under these facts, several of the *Torres* factors weigh heavily against Defendant. Most significantly, we question the legitimacy of the request. The affidavits attached to the motion indicate that Defendant's expert possessed and had reviewed the documents in question. Defendant's expert confirmed this at trial. Granting the continuance would therefore not have aided Defendant, because Defendant already had access to the documents. For the same reasons, the fault of the delay would appear to be Defendant's. Defendant's expert appears to have had the records for almost an entire year before Defendant requested the continuance. Yet Defendant waited until twelve days before trial to request the continuance. Under

these circumstances we find no abuse of discretion. The denial of the motion for a continuance followed from a reasonable application of the factors in *Torres*.

**B.    Sufficiency of the Evidence**

Defendant argues that there was insufficient evidence to support his convictions because (1) "the check was not issued as part of a contemporaneous transaction," and (2) that evidence of wire transfers "shows that he did not have the requisite intent to defraud."

We begin with Defendant's contemporaneous transaction argument. Defendant bases this argument on our holdings in *State v. Platt*, 114 N.M. 721, 845 P.2d 815 (Ct. App. 1992) and *State v. Cruz (Cruz I)*, 2010-NMCA-011, 147 N.M. 753, 228 P.3d 1173, *rev'd*, *Cruz II*, 2011-NMSC-038, 150 N.M. 548, 263 P.3d 890. In those cases, this Court read into Section 30-36-4 a requirement that the bad check be passed as part of a "contemporaneous transaction." *See Cruz I*, 2010-NMCA-011, ¶¶ 38-40; *Platt*, 114 N.M. at 723, 845 P.2d at 817. Our Supreme Court subsequently granted certiorari on *Cruz*, 2010-NMCERT-001, 147 N.M. 674, 227 P.3d 1056, and we stayed this case pending the outcome of that appeal.

The Supreme Court has now rejected the "contemporaneous transaction" requirement set forth in *Platt* and followed by this Court in *Cruz*. 2011-NMSC-038, ¶ 39. The Court held that the only limitation on Section 30-36-4 was that "there must

5

be an exchange, a *quid pro quo* of some kind, involving 'anything of value.'" *Cruz II*, 2011-NMSC-038,¶ 35. In dicta, the Court suggested that perhaps only bad checks given as gifts would escape the scope of Section 30-36-4. *Cruz II*, 2011-NMSC-038, ¶ 35. In the instant case, check number 4157 was written in exchange for a shipment of gas BHA had delivered to Defendant. This is undoubtedly a sufficient exchange to fall within Section 30-36-4. Accordingly, Defendant's contemporaneous exchange arguments are unavailing.

We proceed to Defendant's second sufficiency argument: that his conviction cannot stand because the evidence of two wire transfers shows that he made good on check number 4157. "[T]he test to determine the sufficiency of evidence in New Mexico . . . is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We do not substitute our judgment for that of the jury. *State v. Riley*, 2010-NMSC-005,¶ 12, 147 N.M. 557, 226 P.3d 656. "Contrary evidence supporting acquittal does not provide

a basis for reversal because the jury is free to reject Defendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

Defendant's argument regarding the wire transfers asks us to accept a theory which he argued below and which was rejected by the jury. According to Defendant, evidence of two wire transfers, one for $5000 and one for $15,587.08, shows that he made good on check number 4157, which was for $20,327.98. But there was sufficient evidence to support the jury's conclusion to the contrary.

The contested element in this case is intent. The State was required to prove that Defendant "knew that there were insufficient funds in the account" to cover check number 4157 and that he "intended to deceive or cheat someone by use of the check." The State introduced Defendant's bank records to show that, during the relevant period, Defendant never had sufficient funds in his account to make good on check number 4157. Logan Hall testified Defendant originally said he would pay the check, but that "a short time later he determined he wasn't going to pay the check." He testified that Defendant had "claimed to make multiple transfers into our accounts, none of which we ever received." Rather than pay the check, Defendant eventually sent a letter to BHA demanding that BHA pay Defendant $50,000 in return for Defendant's promise not to sue. The letter never mentioned having made payment via the wire transfers. Furthermore, the letter also indicated that Defendant had tried to

make a deposit into BHA's account but had discovered that BHA's Wells Fargo account was closed. Hall testified that BHA maintained a Wells Fargo account and had never closed it.

In support of his theory that he had already paid for check number 4157 via the wire transfers, Defendant presented testimony from his expert intended to show that the two wire transfers were received by BHA as payment for check number 4157. However, the wire transfers did not add up to the amount on check number 4157. Furthermore, the "Details of Payment to Beneficiary (e.g., invoice number, reference number, payment for, 'by order of')" field on the wire transfer request did not specify that the transfers were for the same invoice that check number 4157 was intended to pay. In fact, the expert testified that that field on the form could not be used to indicate an invoice number. Defendant's expert repeatedly attempted to discuss BHA's banking records to show that BHA actually received the funds, but, because Defendant had not disclosed these records, he was not allowed to do so. The expert was able to identify debits in Defendant's bank records matching the wire transfers, which he argued that the debits proved that the wire requests were received by BHA. But he was not able to directly link the transfers to check number 4157.

The jury appears to have rejected Defendant's theory of the case. Resolving all conflicts in favor of the verdict, we conclude that a rational jury could have found

beyond a reasonable doubt that Defendant had the requisite intent by finding that: (a) Defendant's account never had sufficient money to make good on check number 4157; (b) Defendant made multiple promises to pay but never made good on the check; (C) Defendant then sent a letter that not only showed that he had not paid the check, but actually demanded $50,000 from BHA; (d) Defendant's statements that he had attempted to pay the check only to find that the Wells Fargo accounts were closed were contradicted by the testimony that the Wells Fargo accounts had never been closed; and (e) No evidence indicated that the wire transfers were related to check number 4157, and even assuming that they were, the evidence that BHA ever received those transfers was tenuous at best.

**C.      Denial of the Motion for a New Trial**

At his sentencing hearing, Defendant moved for a new trial. As grounds for this motion, he argued that he had received new evidence proving that BHA received the wire transfers he claims covered check number 4157. Defendant now argues that the district court's denial of his motion for a new trial was error.

We review the denial of a motion for a new trial for abuse of discretion. *See State v. Desnoyers*, 2002-NMSC-031, ¶ 26, 132 N.M. 756, 55 P.3d 968. "Motions for new trials on the basis of newly discovered evidence are not encouraged." *Id.*

For a motion for a new trial to be granted on the basis of newly discovered evidence, Defendant had the burden of proving that the evidence met all the following six requirements:

> (1) it will probably change the result if a new trial is granted;
>
> (2) it must have been discovered since the trial;
>
> (3) it could not have been discovered before the trial by the exercise of due diligence;
>
> (4) it must be material;
>
> (5) it must not be merely cumulative; and
>
> (6) it must not be merely impeaching or contradictory.

*Id.* (internal quotation marks and citation omitted).

The district court denied the motion, observing that "a year and a half is certainly sufficient time for preparation for trial" and that "the same information was presented to the jury at the time." The district court's comments imply that it was concerned about, at the very least, factors one and three. Regarding the first factor, we agree that the "new" evidence was unlikely to change the result because Defendant had presented evidence that the wire transfers had been received at trial. Regarding the third factor, we note that Defendant's expert attempted to testify that he had reviewed the very records Defendant claimed to have discovered after the trial. Defendant's earlier motions indicated that he possessed these records for approximately one year prior to trial. We also note that, because the supposedly new

10

evidence still does not link the wire transfers to the invoice that check number 4157 was meant to pay, it is unlikely that the evidence is material or would change the result if a new trial was granted. The district court did not abuse its discretion by denying Defendant's motion.

**D.     Limits on Lopez's Testimony**

Defendant next argues that the district court abused its discretion by sustaining objections to his expert's testimony about BHA's billing practices on the bases of character evidence and hearsay. The State responds that these objections were sustained based on a previous ruling that the expert could not base his testimony on documents that had not been disclosed to the State.

We review the admission of expert testimony for abuse of discretion. *Torres*, 1999-NMSC-010, ¶ 27. However, "the threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal." *Id.* ¶ 28. "[W]e will affirm the trial court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so." *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828.

At the start of the expert's testimony, the State objected based on its concern that the expert's testimony would be based on documents that had not been disclosed to the State. Defendant agreed to limit examination to the admitted exhibits.

Defendant began by asking why check number 4157 was returned, and the expert tried to reference the Wells Fargo account that had not been disclosed to the State. The court sustained the State's objection, asking Defendant to lay foundation for which records he relied upon to answer the question. The court let the questioning proceed once it was satisfied that the answer could be obtained by referencing only the admitted exhibits.

At this point, the State made its character evidence objection in response to the following question: "[I]n your dealings with Brad Hall & Associates, can you tell me what you know about them in terms of their business dealings?" The objection was sustained without discussion. Defendant contends that the question was meant to solicit the expert's opinion that check number 4157 bounced because of automatic withdrawals BHA had caused to be made. However, it is impossible to tell on what basis the district court made its decision, as Defendant made no argument against the objection. Nevertheless, because the State does not argue that the issue was not preserved, we proceed with our analysis.

Although the State objected on the basis of "character evidence," we agree with the State that the objection was properly sustained on the basis of the court's previous ruling limiting the expert's testimony. As we have noted, the State provided only two words to justify its objection ("character evidence"), and Defendant made no

12

argument for admissibility. Looking at the broader context of the examination of this witness, we conclude that the district court could properly have sustained the objection based on its previous order limiting the expert's testimony. Defendant's question is best understood as one of several attempts Defendant made to circumvent the court's order limiting the basis of the expert's testimony to the documents in evidence. As we discuss below, Defendant's argument regarding the subsequent hearsay objection confirms this. But the only admitted exhibits from which the expert could have drawn conclusions regarding BHA's practices were Defendant's account summaries. The account summaries do not identify the sources of deposits or the intended recipients of debits. Nothing in the remaining exhibits sheds additional light on the account statements. Because the district court could properly sustain the objection on these grounds, it did not abuse its discretion.

After the "character evidence" objection, Defendant rephrased his question, asking whether the expert could "tell us what happened with respect to this check based on" the admitted exhibits. The expert again began to try to discuss a purported arrangement whereby BHA could withdraw monies directly from Defendant's accounts. The State made a hearsay objection which the court sustained, instructing the witness: "Just from the documents, not from what you have been told by [Defendant] or anyone else. Just from the examination of those records." After

13

representing that the exhibits would support his statement, the expert testified that BHA "had authority to take funds from [Defendant's] account on its own any time that it wanted, and it did so."  The expert opined that this was the reason that check number 4157 never cleared.

Assuming without deciding that the hearsay objection was improper, we conclude that any error was harmless.  *See State v. Barr*, 2009-NMSC-024, ¶ 47, 146 N.M. 301, 210 P.3d 198 ("Evidence admitted in violation of our rules is grounds for a new trial where the error was not harmless."); *id.* ¶ 53 (holding that for violations of court rules, "[a] reviewing court should only conclude that a non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict.").  Although the hearsay objection was initially sustained, the court's discussion made it clear that the ruling was related to whether the testimony was based on the exhibits.  The parties disputed whether this was the case.  Ultimately, the expert convinced the court that his opinion was based on the exhibits and he was allowed to testify that BHA made withdrawals directly from Defendant's accounts.  Because the initial ruling did not ultimately prevent the expert from answering the question, there was no reasonable probability that the verdict was affected, and any error was therefore harmless.

Defendant's third argument regarding court-imposed limits on his expert's testimony is that it was error for the court to prevent the expert from testifying that Defendant did not intend to defraud BHA. The State contends that the court did not actually sustain this objection. We agree with the State that the district court did not rule on the objection in question. Instead, the court warned Defendant that if he chose to pursue the line of questioning, he would expect rebuttal from the State. Defendant chose not to pursue the question and moved on to a different topic. As Defendant chose not to obtain a ruling, there is no adverse ruling for us to review.

**E.      Admittance of the Settlement Offer**

Defendant's final argument is that the district court erred in admitting the settlement offer in violation of Rule 11-408 NMRA. The State counters that the letter was not one of settlement and that, even if the letter is viewed as a settlement offer, it was admissible because it was offered to show Defendant's intent, not his liability.

Rule 11-408 provides that evidence of settlement "is not admissible to prove liability for or invalidity of [a] claim or its amount." Rule 11-408 NMRA. However, the rule "does not require exclusion when the evidence is offered for another purpose." *Id.* Whether to admit evidence of settlement offers for a purpose other than proving liability is within the discretion of the district court. *See Fahrbach v. Diamond Shamrock, Inc.*, 122 N.M. 543, 548, 928 P.2d 269, 274 (1996).

15

In this case, the letter was not offered to prove or disprove liability for a claim or its amount. In the letter, neither party to the proposed offer admits liability. Nor did the agreement mention check number 4157; instead, it stated that "an accounting dispute arose … concerning the quantities and pricing of the fuel being delivered." In the cover letter to the proposed settlement offer, Defendant stated that "after trying to deposit into your account so as to maintain the intent to pay I found out that you have closed all of your accounts with Wells Fargo."

At trial, the State argued that the letter was offered to show Defendant's intent. The letter, which was dated May 1, 2006, several weeks after check number 4157 bounced, did not say that Defendant had made wire transfers into BHA's accounts. Instead, it said that Defendant had tried to pay but was unable to do so. Furthermore, the letter did not offer to make good on the check, but instead offered to refrain from suing BHA in return for $50,000. On these facts, we conclude that the district court did not abuse its discretion in admitting the settlement agreement because the agreement was offered not to prove or disprove a claim, but for its relevance to whether Defendant intended to pay check number 4157.

**III. CONCLUSION**

For the foregoing reasons, the district court's judgment is affirmed.

**IT IS SO ORDERED.**

16

 

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**CYNTHIA A. FRY, Judge**