845 P.2d 815

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Judd PLATT, Defendant–Appellant.**

No. 13510.

Court of Appeals of New Mexico.

Oct. 5, 1992.

Certiorari Denied Nov. 18, 1992.

Tom Udall, Atty. Gen., Gail MacQuesten, Ass't Atty. Gen., Santa Fe, for plaintiff-appellee.

Mark Sampson also known as Judd Platt, pro se.

OPINION

APODACA, Judge.

Defendant appeals from his conviction of fraud by worthless check. On appeal he argues that: (1) the check in question was given for a pre-existing debt, which, as a matter of law, did not violate the Worthless Check Act, NMSA 1978, §§ 30–36–1 to –10 (Repl.Pamp.1989); (2) the evidence that the victim had reason to believe that defendant did not have sufficient funds to cover the check was uncontroverted; (3) the trial court erred in granting the state's motion in limine to bar any reference to the fact that North Academy Interiors was not a licensed contractor; and (4) the trial court erred in ordering him to make full restitution to North Academy Interiors. We affirm the conviction under the first three issues, but reverse the sentence and remand for a redetermination of the amount of restitution under issue No. 4.

FACTS

In late 1989 and early 1990, defendant and his partner, Yolanda Deveaux Blake (Blake), were renovating a property in Taos for use as a bed-and-breakfast inn. In November 1989, defendant and Blake went to Colorado Springs, Colorado, where they contracted with North Academy Interiors to have carpeting for twelve rooms and linoleum for one room delivered and installed for $6,777.20 (the carpet contract). Defendant gave North Academy Interiors a check for $3,388.50, representing 50 percent of the contract price. The check was honored by the bank.

Later, in December 1989, Blake entered into a second contract with North Academy Interiors for the fabrication, delivery, and installation of draperies for $6,465.00 (the drapery contract). Blake wrote a check to North Academy Interiors for $3,000.00 as a deposit on the drapery contract. The check was dishonored in mid-January 1990. On January 2, 1990, North Academy Interiors completed installing the carpets and linoleum. Defendant gave the foreman of the installation crew a check for $3,388.60, the balance due under the carpet contract. The check was returned for insufficient funds, and North Academy Interiors was notified of its return on or about January 11, 1990.

On January 15, 1990, Lisa Gibson of North Academy Interiors called defendant. At that time, Gibson knew only that the check for the balance due on the carpet contract had been returned for insufficient funds. Gibson told defendant that she and Randy Stevenson of North Academy Interiors would come to Taos the next day to finish the job by hanging the curtains, and that, because his check had been returned for insufficient funds, they would require a cashier's check for the balance due on both contracts. Defendant indicated he would have a cashier's check ready for them.

On January 16, defendant did not have the cashier's check. Instead, defendant informed Gibson that the $3,000.00 deposit check on the drapery contract also had been returned for insufficient funds. After discussion, Gibson accepted a personal check from defendant in the amount of $9,979.60, representing the dishonored check for the deposit on the drapery contract, the balance due under both contracts, and miscellaneous charges for an additional trip to Taos and returned check charges. Later, this check was also returned for insufficient funds. Defendant's conviction was based on this check. At the time of trial, North Academy Interiors had not received any payment on the returned check.

DISCUSSION

1. *The Pre-existing Debt Rule.*

The Worthless Check Act makes it a crime:

> for a person to issue in exchange for anything of value, with intent to defraud, any check ... knowing at the time of the issuing that the offender has insufficient funds in or credit with the bank or depository for the payment of such check ... in full upon its presentation.

§ 30–36–4. Defendant, relying on *State v. Davis*, 26 N.M. 523, 194 P. 882 (1921), contends that he issued the check in satisfaction of a pre-existing debt and thus did not receive anything of value as required under the statute. The state contends that

defendant is reading the statute's language too narrowly. We agree with the state.

In *Davis*, the defendant had issued a check as payment in full on an outstanding account. The check was not paid because of insufficient funds. Our supreme court held that the defendant's actions were not a violation of the predecessor to the Worthless Check Act. The court noted that in such situations the account remains unpaid until the check clears. Because the check did not clear, the balance owed did not change, and thus nothing of value was received by the defendant. This rule, sometimes referred to as the pre-existing debt rule, has been recognized in many jurisdictions. *See* 32 Am.Jur.2d *False Pretenses* § 82 (1982); 35 C.J.S. *False Pretenses* § 21(c) (1960); F.M. English, Annotation, *Construction and Effect of "Bad Check" Statute with Respect to Check in Payment of Pre–Existing Debt,* 59 A.L.R.2d 1159 § 2 (1958).

■ Defendant essentially contends that, because the flooring contract was already signed and North Academy Interiors' work under the contract had been completed, his check was issued to pay a pre-existing debt. In our view, this argument rests on a fundamental misreading of the statute. The plain language of the statute prohibits giving a worthless check in exchange for something of value. § 30–36–4; *see also State v. Libero,* 91 N.M. 780, 581 P.2d 873 (Ct.App.1978) (violation occurs if one issues check in exchange for value with requisite intent and knowledge). The facts of this appeal demonstrate that the parties intended to have a cash transaction; there is no evidence that North Academy Interiors intended to extend credit to defendant. Thus, the fact that the goods and services were delivered before the check was issued did not signify that an exchange did not occur within the meaning of Section 30–36–4.

■ We thus hold that a worthless check is given for something of value if the worthless check is issued as part of a contemporaneous transaction between the parties in which something of value is exchanged for the check, without regard to whether the thing of value is delivered before or after the worthless check is issued. We read *Davis* as limited to its facts, meaning situations in which something of value has previously been delivered to a person in reliance on that person's credit, and the check is later tendered as partial payment on the credit account. We note that our interpretation is consistent with other jurisdictions' interpretations of similar statutes. *See Ledford v. State,* 184 Ga.App. 556, 362 S.E.2d 133 (1987) (holding that transaction was contemporaneous where something of value was given in reliance on delivery of check, even though check was delivered one day after goods were received); *Gilley v. State,* 182 Ga.App. 681, 356 S.E.2d 655 (1987) (issue is whether delivery of check is part of a single contemporaneous transaction; contemporaneous transaction found where work completed on Friday and check delivered the following Monday); *Parker v. State,* 484 So.2d 1033 (Miss.1986) (distinguishing between cash and credit transactions); *Moore v. State,* 205 Miss. 151, 38 So.2d 693 (1949) (in banc) (distinguishing between previously completed transactions and exchanges as part of the same transaction); *Hoyt v. Hoffman,* 82 Nev. 270, 416 P.2d 232 (1966) (distinguishing between pre-existing obligations and obligations created concurrently with the drawing of the check); *Perry v. State,* 594 P.2d 782 (Okla.Crim.App.1979) (distinguishing between cash and credit transactions); *Williams v. State,* 281 S.W.2d 41 (Tenn. 1955) (distinguishing between cash and credit transactions).

## 2. *Notice Of Insufficient Funds.*

■ The Worthless Check Act does not apply to "any check where the payee or holder knows or has been expressly notified prior to the drawing of the check or has reason to believe that the drawer did not have on deposit or to his credit ... sufficient funds to insure payment on [the check's] presentation." § 30–36–6(A); *see also State v. McKay,* 79 N.M. 797, 450 P.2d 435 (Ct.App.1969). Defendant contends that the evidence (that North Academy In-

teriors knew that the funds in his account were insufficient to cover the check when it was written) is uncontroverted. We note, however, that the language of the statute implicitly, if not expressly, requires that the funds or credit exist in the account when the check is presented for *payment,* rather than when it is written and *delivered.* §§ 30–36–4, –6(A); *see also* § 30–36–6(B) (creating an exception to the act for post-dated checks); *State v. Downing,* 83 N.M. 62, 488 P.2d 112 (Ct.App.1971) (holding that Worthless Check Act did not apply to post-dated check).

■ Two of North Academy Interiors' employees, Lisa Gibson and Randy Stevenson, testified at trial that on January 16, 1990, when defendant gave them the check in question, defendant told them that the funds were in the bank but the account was frozen, that he was on his way to Santa Fe to meet with his banker, and that the bank would release the funds when presented with documentation of the work done on the property. They also testified that defendant assured them the check would be "as good as gold" by the time they returned to Colorado Springs and that they believed his assurances.

Based on this testimony, we believe that the evidence on which defendant relies only creates a conflict in the evidence concerning whether North Academy Interiors or its employees knew or had reason to believe that defendant lacked sufficient funds or credit to insure payment of the check upon its presentation. *See State v. McKay.* The jury resolved this conflict against defendant. We conclude that Gibson's and Stevenson's testimony was sufficient evidence to support the verdict on this issue. *See id.*

### 3. *The Motion In Limine.*

In October 1990, some ten months after the check had been dishonored, defendant contacted the Construction Industries Division (CID) of the New Mexico Regulation and Licensing Department. CID informed him that its office took the position that the New Mexico Construction Industries Licensing Act, NMSA 1978, §§ 60–13–1 to –59 (Repl.Pamp.1989 & Cum.Supp.1992), and the regulations issued by CID under this act required any firm or entity installing linoleum or drapery rods to be licensed. CID also told defendant that North Academy Interiors was not licensed in New Mexico. On the morning of trial, the state filed a motion in limine asking the trial court to prohibit defendant from referring to his contentions that some of the work done by North Academy Interiors required a contractor's license and that North Academy Interiors was not licensed. The trial court heard the motion on facts to which the parties agreed for purposes of the motion. After argument, the trial court granted the state's motion.

■ Defendant contends on appeal that the trial court erred in granting the motion because the evidence was relevant to various issues at trial. We observe, however, that the trial court did not exclude the evidence because it was not relevant, but rather because it would in effect create a "trial within a trial" and distract the jury from the events of January 16, 1990, and from defendant's intent when he gave the check to Gibson. Thus, we believe that the trial court excluded the evidence under SCRA 1986, 11–403, which allows the trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues. We review the trial court's exclusion of this evidence for an abuse of discretion. *State v. Carr,* 95 N.M. 755, 626 P.2d 292 (Ct. App.), *cert. denied,* 454 U.S. 853, 102 S.Ct. 298, 70 L.Ed.2d 145 (1981); *State v. Barela,* 91 N.M. 634, 578 P.2d 335 (Ct.App.1978).

We are not persuaded that the trial court abused its discretion in excluding this evidence. Like the trial court, we will assume without deciding that the installation of linoleum and drapery rods requires a license and that North Academy Interiors did not have the appropriate license. However, these activities were a relatively small portion of the work done under the contracts. Besides, the issues in this case involved the events of January 16, 1990, and defendant's intent at the time he issued the check. *See* § 30–36–4; SCRA

1986, 14–1670. We agree with the trial court that the fact that defendant learned of the licensing requirement ten months after the check was dishonored considerably diminished the probative value of the evidence. Consequently, on the record before us, we hold that the trial court did not abuse its discretion in excluding this evidence. *See State v. Barela.*

### 4. Restitution Of The Full Amount Of Check.

The judgment and sentence required defendant to make restitution to North Academy Interiors of the full amount of the dishonored check. Defendant argues that the trial court erred in ordering full restitution.

■ The statute governing restitution authorizes the trial court to order a defendant to make restitution for "actual damages" suffered by the victim. NMSA 1978, § 31–17–1 (Repl.Pamp.1990). Actual damages are defined as "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event" with certain exceptions that are not relevant here. § 31–17–1(A)(2); *State v. Griffin,* 100 N.M. 75, 665 P.2d 1166 (Ct.App.1983). When an unlicensed contractor performs work for which a license is required, the contractor is barred by statute from using the courts to obtain payment. *See* § 60–13–30(A). Additionally, an unlicensed contractor that has performed work for which a license is required is not entitled to retain the funds charged for the unlicensed work. *Mascarenas v. Jaramillo,* 111 N.M. 410, 806 P.2d 59 (1991).

■ Because we agree that defendant cannot be required to make restitution for any amounts owed to North Academy Interiors that the company could not recover in a civil action against defendant, and because North Academy Interiors would not be able to recover in a civil action any amount owed for work for which a New Mexico contractor's license was required, we reverse that portion of defendant's sentence that requires him as a condition of parole to make restitution of the full amount of the check. Rather, the maximum amount of restitution that can be required should be limited to the amount owed for goods and services for which a license was not required. We thus remand to the trial court to redetermine the proper amount of restitution.

At the time this case was tried, North Academy Interiors had filed a civil suit against defendant to recover the amounts owed under the contracts. As a result, the issue of the maximum amount North Academy Interiors could properly recover may have already been resolved in that separate proceeding. If not, the trial court shall otherwise proceed to determine the proper amount of restitution based on our discussion of this issue. If a judgment in North Academy Interiors' favor is entered in the civil case, any payment by defendant to North Academy Interiors shall be set off against that judgment. § 31–17–1(H).

## CONCLUSION

Defendant's conviction is affirmed. That portion of defendant's sentence requiring full restitution of the amount of the check is reversed, and the matter is remanded to the trial court for redetermination of the amount of restitution to be made to North Academy Interiors by defendant, consistent with this opinion.

IT IS SO ORDERED.

DONNELLY and MINZNER, JJ., concur.