**Certiorari Granted, January 25, 2010, No. 32,130**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-011**

**Filing Date: October 27, 2009**

**Docket No. 27,292**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**DEBBIE CRUZ,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**FRY, Chief Judge.**

**{1}**     Defendant appeals from a conditional discharge order following jury convictions for four counts of issuing a worthless check over $25.  *See* NMSA 1978, § 30-36-4 (1963).  She initially raised four issues on appeal and added a fifth issue regarding ineffective assistance of counsel in her reply brief.  We discuss Defendant's claims of error as to lack of jurisdiction and improper venue and affirm on those issues.  However, we reverse the

convictions on the worthless check charges because the evidence was insufficient to prove all of the elements necessary under Section 30-36-4. Based upon our decision to reverse, we do not address Defendant's remaining issues.

## BACKGROUND

**{2}** Defendant was the president of DGM Construction, Inc. (DGM), a construction corporation based in Albuquerque, New Mexico. As president of DGM, Defendant paid the company's bills and signed the checks for all employees after those checks were prepared by an independent bookkeeping service.

**{3}** In June 2002, DGM performed work as a subcontractor at Zuni High School on the Zuni Indian Reservation in McKinley County (the Zuni project). George Mulvaney was the construction superintendent for DGM, and his duties included supervising the Zuni project construction site and reporting employees' hours to the independent bookkeepers. The bookkeepers prepared the payroll checks based on the hours reported by either Defendant or Mulvaney and submitted the prepared checks to Defendant, who then signed them. Defendant would then meet Mulvaney either in Albuquerque or halfway between Albuquerque and the Zuni Indian Reservation and give the checks to Mulvaney to forward to the employees.

**{4}** Leo Eracho, Vicki Kallestewa, and Benjamin Kallestewa (the laborers/payees), all enrolled members of the Zuni Tribe, were employed by DGM to work on the Zuni project. They were paid every Friday for work they performed during the week ending the previous Friday. They received the checks identified as State's Exhibits 1, 2, and 3, dated June 21 and June 27, 2002, in return for their labor.

**{5}** The three laborers/payees customarily went to Joe Milo's Trading Company (Milo's), a business located twenty miles south of Gallup, New Mexico, every Friday to cash their checks. Joe Milosevich, the owner of Milo's, cashed the checks identified as State's Exhibits 1, 2, and 3 for the laborers/payees. He then deposited the checks in his own account but was denied payment due to insufficient funds. Milosevich resubmitted the checks twice, only to have them returned for insufficient funds. He deposited the checks a third time, but they were returned because the account was closed.

**{6}** Milosevich then sent a certified letter to Defendant regarding the dishonored checks at the address listed on the checks, but the letter was returned as unclaimed. Milosevich testified that his attorney attempted to contact DGM, but to no avail.

**{7}** Based upon the dishonored checks issued to the laborers/payees which remained unpaid by Defendant, the State charged Defendant with four counts of issuing worthless checks in violation of Section 30-36-4. A jury convicted Defendant of all four counts, and the district court entered an order for conditional discharge. This appeal followed.

## DISCUSSION

**Subject Matter Jurisdiction**

**{8}**     Defendant claims that the district court erred in denying her motion to dismiss for lack of jurisdiction. She contends that because the laborers/payees were all members of the Zuni Tribe performing work on Zuni land and because the checks were delivered to the laborers/payees on Zuni land, New Mexico courts do not have jurisdiction over the criminal prosecution.

**{9}**     On the question of whether a New Mexico court has criminal jurisdiction to prosecute Defendant, we review whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party. *State v. Frank*, 2002-NMSC-026, ¶ 10, 132 N.M. 544, 52 P.3d 404. We defer to the district court's findings of fact if they are supported by substantial evidence and review questions of law de novo. *Id.*; *see State v. Dick*, 1999-NMCA-062, ¶ 6, 127 N.M. 382, 981 P.2d 796.

**{10}**     Defendant contends that the district court lacked criminal jurisdiction over her because the alleged crimes were committed against Indians in Indian country. It is undisputed that Defendant is not a member of an Indian tribe; however, she notes that Mulvaney delivered the checks to the laborers/payees on Indian land and argues that, because the crimes occurred on Indian land, prosecution is within the jurisdiction of the tribal court. *See generally Dick*, 1999-NMCA-062, ¶ 7 (recognizing the general principle that a state has no jurisdiction over crimes committed by or against an Indian in "Indian country" (internal quotation marks and citation omitted)).

**{11}**     We disagree because the evidence does not establish that all of the elements of the crime took place on Indian land. *See State v. Clark*, 2000-NMCA-052, ¶¶ 5-7, 129 N.M. 194, 3 P.3d 689 (holding that the district court had jurisdiction to try a Native American defendant for the crimes of larceny and conspiracy when the crimes were initiated within Indian country but continued outside the boundaries of Indian country into New Mexico). Milo's is located in McKinley County. In addition, the checks were initially signed by Defendant in Albuquerque and delivered to Mulvaney at some point approximately halfway between Albuquerque and the construction site on the Zuni Indian Reservation. This evidence shows that at least some of the elements of the crimes took place in either Bernalillo County or McKinley County in locations that were not in Indian country. Therefore, New Mexico had jurisdiction to prosecute Defendant for these crimes.

**{12}**     Defendant contends that the district court arguably exceeded its authority in taking judicial notice of the fact that Milo's was in McKinley County and, therefore, there is a question as to whether the laborers/payees cashed their checks on Indian land. We disagree. Milosevich testified, without contradiction, that he ran the trading post located approximately twenty miles south of Gallup. Furthermore, Benjamin Kallestewa testified that he and the other laborers/payees cashed their checks at Milo's because it cost less than cashing them on the Zuni Indian Reservation.

**{13}**     The district court was authorized to take judicial notice of a generally known location in the absence of some evidence suggesting otherwise. *See* Rule 11-201(B)(1), (2) NMRA

3

(stating that a trial court may take judicial notice of facts "not subject to reasonable dispute" that are either "generally known within the community," or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Trujillo v. Dimas*, 61 N.M. 235, 244-245, 297 P.2d 1060, 1066 (1956) (observing that a court may take judicial notice of geographical facts which are provable by reference to maps); *cf. State v. Tooke*, 81 N.M. 618, 619, 471 P.2d 188, 189 (Ct. App. 1970) ("New Mexico allows its courts to take judicial notice of boundaries of the state and counties therein."), *overruled on other grounds by State v. Ruffins*, 109 N.M. 668, 789 P.2d 616 (1990). Furthermore, even if Milo's is on Indian land, Defendant engaged in other activities that contributed to the crimes while not on Indian land, including signing the checks and delivering them to Mulvaney. Therefore, jurisdiction was proper in the New Mexico court. *See Clark*, 2000-NMCA-052, ¶¶ 5-7.

**{14}** Finally, even though Milosevich cashed the checks for the laborers/payees, his testimony indicates that he did not seek reimbursement from them after the checks were dishonored and, therefore, he was the ultimate victim of Defendant's wrongful acts. *See* UJI 14-1670 NMRA (requiring that the defendant intended to deceive someone by use of the worthless check but containing no requirement that the person injured be the person deceived by the defendant). Because there is no indication that Milosevich is Native American, New Mexico had jurisdiction to prosecute these crimes even if they occurred on Indian land. *See generally State v. Warner,* 71 N.M. 418, 422, 379 P.2d 66, 69 (1963) (concluding that "New Mexico [s]tate [c]ourts have jurisdiction over criminal offenses committed on an Indian reservation within this state, by non-Indians, which are not against an Indian nor involving Indian property").

**{15}** Based upon the foregoing, the New Mexico district court had jurisdiction over Defendant for these offenses.

**Venue**

**{16}** Defendant claims that venue was improper in McKinley County because none of the material elements of the crimes occurred there. "A motion to dismiss for improper venue involves questions of law that we review de novo." *Gardiner v. Galles Chevrolet Co.*, 2007-NMSC-052, ¶ 4, 142 N.M. 544, 168 P.3d 116; *State v. Roybal*, 2006-NMCA-043, ¶ 25, 139 N.M. 341, 132 P.3d 598.

**{17}** We initially note that affirmance of the district court's refusal to dismiss for improper venue is justified based on untimeliness alone. Defendant entered a waiver of arraignment on January 27, 2006. She alerted the trial court that venue might be an issue, but did not move to dismiss for lack of proper venue until July 17, 2006, the day before trial was to commence. Pursuant to the Rules of Criminal Procedure, Defendant must file a motion to dismiss for improper venue within ninety days of arraignment. *See* Rule 5-601(D) NMRA. Her failure to file a motion challenging venue for almost six months after waiving arraignment provides justification for the district court's finding that Defendant waived her objection to improper venue. *See* Rule 5-601(D); *see also State v. Lopez,* 84 N.M. 805, 807-08, 508 P.2d 1292, 1294-95 (1973) (recognizing that an objection to venue may be waived if not brought in a timely fashion).

4

**{18}** Even if Defendant's motion had been timely, we agree with the district court that the motion was not well taken. A "trial may be had in any county in which a material element of the crime was committed." NMSA 1978, § 30-1-14 (1963). Furthermore, venue "may be established by a mere preponderance of the evidence." *Roybal*, 2006-NMCA-043, ¶ 19. Therefore, venue was proper in McKinley County as long as a preponderance of the evidence showed that a material element of the crime was committed there. *See State v. Wise*, 90 N.M. 659, 662, 567 P.2d 970, 973 (Ct. App.1977) (rejecting as "frivolous" the defendant's contention that the state failed to prove that any material element of the crime of receiving stolen property occurred in Bernalillo County because there was "an abundance of evidence [showing] that the 'receiving' occurred [there]").

**{19}** In this case, the evidence showed that the laborers/payees were hired, provided their services, and paid in McKinley County. Moreover, the ultimate victim, Milosevich, cashed the checks for the laborers/payees in McKinley County where he operated his business. Because these elements of the crime were committed in McKinley County, venue was proper there.

**{20}** Defendant argues that every action allegedly committed by her took place in Bernalillo County because the evidence showed that Defendant worked in DGM's office in Albuquerque and signed the checks there. Defendant also notes the lack of evidence indicating that she was ever present in McKinley County during the relevant time period.

**{21}** We are not persuaded that venue was improper in McKinley County merely because many of the acts leading to Defendant's convictions occurred outside that county. Defendant cites *Marsh v. State*, 95 N.M. 224, 620 P.2d 878 (1980), in support of her claim that venue was improper. In *Marsh*, our Supreme Court held that venue was proper, but not appropriate, in Valencia County because the charges of possession and conspiracy were based on the defendant's conduct in flying over Valencia County en route to McKinley County where 479 pounds of marijuana were unloaded. *Id.* at 225, 620 P.2d at 879. The Court held that venue was more appropriate in McKinley County because there was a more substantial nexus between the criminal acts and that county. *Id.*

**{22}** Defendant contends, based on *Marsh*, that the district court should have dismissed the charges because the more appropriate venue was Bernalillo County which had "the most significant contact[]" with Defendant's alleged criminal acts. *See id.* at 227, 620 P.2d at 881. We disagree and note that this Court rejected a similar argument in *Roybal*, 2006-NMCA-043, ¶¶ 30-32.

**{23}** In *Roybal*, the district court dismissed the trafficking charges filed against the defendant in Santa Fe County because even though the officer began pursuing the defendant in Santa Fe County, the car was actually stopped and searched in Rio Arriba County. *Id.* ¶¶ 1, 26. The defendant argued that venue was improper in Santa Fe County because the majority of the criminal actions occurred in Rio Arriba County and claimed that, "when a crime is committed in multiple counties, *Marsh* mandates" prosecution in the county that has the most "'significant contacts with the alleged criminal acts of [the d]efendant.'" *Id.* ¶ 30 (quoting *Marsh*, 95 N.M. at 227, 620 P.2d at 881). This Court disagreed and observed that

5

"there is no specific language in the [venue] statute requiring the chosen venue to be the county with the most significant contacts or the more substantial nexus with the criminal acts of [the d]efendant." *Roybal*, 2006-NMCA-043, ¶ 31 (internal quotation marks and citation omitted).

{24}    The *Roybal* Court distinguished the result in *Marsh* because in *Marsh*: (1) the Supreme Court was exercising its power of superintending control, which the Court of Appeals does not have, *see* N.M. Const. art. VI, § 3; (2) there were policy concerns regarding the need to avoid possible conflicts with a judge; (3) any contact with Valencia County was merely incidental because the airplane carrying marijuana merely passed over Valencia County on its way to McKinley County, where all of the criminal activity occurred; and (4) any prosecution in Valencia County would be remote from the location of the defendant and the witnesses. *Roybal*, 2006-NMCA-043, ¶ 32; *see Marsh*, 95 N.M. at 226-27, 620 P.2d at 880-81. Based on these distinctions and the language of the venue statute itself, this Court in *Roybal* held that "venue was established by a preponderance of the evidence in Santa Fe County, [and] the [district] court erred in dismissing the charges." 2006-NMCA-043, ¶ 32.

{25}    The underlying facts of this case, similar to those in *Roybal*, exhibit a greater nexus between the alleged criminal activity and the chosen county than what was presented in *Marsh*. As previously discussed, the laborers/payees performed services on behalf of DGM in McKinley County, they were paid in McKinley County, and they negotiated the checks for cash at Milo's in McKinley County. Furthermore, the evidence belies Defendant's claim that McKinley County was an inconvenient forum for key witnesses for the State because both Milosevich and the laborers/payees were apparently located in McKinley County. Therefore, the district court did not err in denying Defendant's motion to dismiss for improper venue.

**Sufficiency of the Evidence**

{26}    Defendant challenges the sufficiency of the evidence to support her convictions. Specifically, she contends that there was insufficient evidence to establish a "contemporaneous transaction" between the labor performed and the issuance of and attempts to cash the checks. She also contends the evidence was insufficient to show that she had the requisite intent to commit the crimes because the State failed to establish that she knew that funds were insufficient to pay the checks. Because we agree with Defendant's first contention, we reverse and need not consider whether there was sufficient evidence regarding Defendant's intent.

{27}    In general, when reviewing a challenge to the sufficiency of the evidence, we review the evidence introduced at trial to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor of the verdict. *See State v. Apodaca*, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994).

6

**{28}** "Although framed as a challenge to the sufficiency of evidence, [the d]efendant's argument requires us to engage in statutory interpretation to determine whether the facts of this case, when viewed in the light most favorable to the verdict, are legally sufficient to sustain a conviction" for issuing worthless checks. *State v. Barragan*, 2001-NMCA-086, ¶ 24, 131 N.M. 281, 34 P.3d 1157. Issues of statutory interpretation and construction are questions of law subject to de novo review. *Id.*

**{29}** Defendant was charged with four counts of issuing worthless checks over $25 or more pursuant to Section 30-36-4 of the Worthless Check Act, NMSA 1978, §§ 30-36-1 to -10 (1963, as amended through 1984). Section 30-36-4 provides that

> [i]t is unlawful for a person to issue *in exchange for anything of value*, with intent to defraud, any check, . . . knowing at the time of the issuing that the offender has insufficient funds in or credit with the bank . . . for the payment of such check . . . in full upon its presentation.

(Emphasis added.) The offense is commonly known as "fraud by worthless check." *State v. Platt*, 114 N.M. 721, 722, 845 P.2d 815, 816 (Ct. App. 1992).

**{30}** In keeping with the requirement that Defendant issue the check "in exchange for anything of value," the jury was instructed that the State had to prove beyond a reasonable doubt that Defendant issued checks to the laborers/payees and the laborers/payees "gave service" for the checks. *See* UJI 14-1670 (requiring the State to prove that the recipient of the check gave money or something which had value in exchange for the check); *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct. App. 1986) ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured."). Before trial and again after the State put on its case in chief, Defendant moved for a directed verdict, arguing that the evidence showing that the checks were issued to the laborers/payees as wages for the work they performed did not qualify as checks issued "in exchange for anything of value" as required under the statute. She argued below and contends on appeal that the evidence was insufficient to establish that the checks were issued in exchange for something of value because it failed to show that the checks were delivered as part of a "contemporaneous transaction" with the services provided. We agree.

**{31}** It is well established that a check given in payment for an antecedent or pre-existing debt is not covered by the Worthless Check Act. *See Platt*, 114 N.M. at 722-23, 845 P.2d at 816-17 (recognizing that under what is sometimes called the "pre-existing debt rule," someone who issues a worthless or subsequently dishonored check in satisfaction of an antecedent or pre-existing debt will not be liable under the Worthless Check Act); *State v. Davis*, 26 N.M. 523, 525, 194 P. 882, 882 (1921) (construing the predecessor to the Worthless Check Act and holding that the defendant was not liable under the statute when he issued a worthless check for payment of a pre-existing debt); *cf. State v. Tanner*, 22 N.M. 493, 495, 164 P. 821, 822 (1917) (interpreting the predecessor to the Worthless Check Act and recognizing that the defendant issued the check under false pretenses when he did not possess adequate funds and the check was issued "to induce the person to whom it is made to part with something of value" (internal quotation marks and citation omitted)). The lack of criminal liability is predicated on the fact that even though the check has been dishonored,

7

the debt remains unpaid and, therefore, the issuer did not receive anything of value in exchange for the check. *See* § 30-36-4 (requiring that the check be issued "in exchange for [something] of value"); *Davis*, 26 N.M. at 525, 194 P. at 882 (recognizing that something of value must have been received by the defendant in exchange for the check or that otherwise there "can be no intent to defraud, which is the gist of the offense" and recognizing that nothing of value is received at the time a check is issued in payment on an account because the debt is only satisfied if the check is honored).

**{32}** The holdings in *Davis, Tanner*, and *Platt* support the conclusion that payment of a pre-existing debt with a worthless check is not covered by the Worthless Check Act. However, they do not directly address the question of whether payment of wages earned is payment of a pre-existing debt, i.e., whether the laborers/payees provided services in exchange for the dishonored checks. As previously discussed, the laborers/payees were paid every Friday for work they performed during the week ending the previous Friday. Therefore, unless the payment of wages over a week after those wages were earned constitutes payment in exchange for the services rendered, the checks will be considered payment of an antecedent or pre-existing debt and thus not encompassed within the Worthless Check Act.

**{33}** New Mexico appellate courts have never considered whether the payment of wages that have already been earned constitutes a payment on a pre-existing or antecedent debt or whether it can be considered a "contemporaneous transaction." In support of her contention, Defendant alerts this Court to the cases cited in the *Platt* opinion and other cases standing for the proposition that criminal statutes concerning worthless checks do not cover situations in which the check is written after the goods have already been obtained or the services rendered. She also notes, correctly, that the State's answer brief fails to address the issue of whether a contemporaneous transaction occurred in this case. Moreover, the State has failed to cite any case law in support of its assertion that the evidence was sufficient to satisfy the elements of Section 30-36-4. *Cf. In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (observing that if a party cites no authority to support an argument, we may assume no such authority exists). Instead, it merely asserts in a conclusory fashion that the evidence was sufficient for the jury to find that Defendant issued the checks to the laborers/payees in exchange for their services.

**{34}** We first consider the cases cited in the *Platt* decision. *See* 114 N.M. at 723, 845 P.2d at 817. Although none of those cases specifically address checks issued in payment for wages, they suggest that conviction requires testimony or evidence that the recipient of the check gave value or rendered performance specifically in reliance on the check; it is not enough that performance was based on a promise to pay. *See, e.g.*, *Ledford v. State*, 362 S.E.2d 133, 134 (Ga. Ct. App. 1987) (recognizing that "the payee must give up something of value in reliance on the check in question" (internal quotation marks and citation omitted)).

**{35}** For example, in *Parker v. State*, 484 So. 2d 1033, 1034-37 (Miss. 1986) (per curiam), the payee was asked at trial whether, at the time he delivered the furniture to the defendant, he was relying on the defendant's credit or promise to pay at a later date, or whether the payee was relying on the check when delivering the furniture. *Id.* at 1035. The payee

responded that he was "relying on the check" and stated that he would not have delivered two loads of furniture on Friday and one load on Saturday had he not received the check. *Id.* Based on this testimony, the court affirmed the defendant's conviction for false pretenses by delivery of a bad check. *Id.* at 1036 (recognizing that "[i]f a creditor-debtor relationship is created by the transaction, a conviction of false pretenses may not stand [but] if the [s]tate proves that a seller parts with something of value on the belief that the check is good at that particular time, a conviction of false pretenses may be upheld"); *see Hoyt v. Hoffman*, 416 P.2d 232, 233 (Nev. 1966) (reversing the defendant's conviction because the worthless check was issued in payment of an overdue account and conviction would be inconsistent with the purpose of Nevada's Worthless Check Act, which is "to charge a defendant who obtains a benefit as a result of the check"); *Perry v. State*, 594 P.2d 782, 784 (Okla. Crim. App. 1979) (holding that it was a question of fact for the jury whether the defendant could be criminally liable for issuing a worthless check because the payee performed services for the defendant "upon [the] inducement of being paid by check" or whether the services were performed under a credit agreement).

**{36}** In cases from other jurisdictions construing similar statutes where payment of wages are concerned, courts have held that the defendant/employer cannot be held liable under statutes similar to New Mexico's Worthless Check Act because the wages constitute a pre-existing debt. *See, e.g.*, *State v. Sinclair*, 337 A.2d 703, 707-11 (Md. 1975) (holding that the defendant could not be liable under Maryland's worthless check statute when he issued a check to a discharged employee representing payment to him for services rendered because the defendant did not obtain anything of value based upon the employee's reliance on the check); *State v. Cote*, 62 Ohio Misc. 2d 202, 203-04 (Mun. Ct. 1991) (holding that when an employer issues a check to an employee for wages earned, the employer has made payment on a pre-existing debt and therefore the employer has not obtained any benefit nor has the employee suffered a detriment from the dishonored check and thus the employer cannot be convicted under Ohio's Worthless Check Act).

**{37}** For example, in *Hindman v. State*, 378 So. 2d 663, 664 (Miss. 1980), the payee agreed to act as mistress of ceremonies for a bridal show in exchange for $300. The payee did the promised work and, at the end of the performance, the defendant paid the promised $300. *Id.* When the check later bounced, the defendant was charged with and convicted of fraud by worthless check. *Id.* The conviction was overturned on appeal because the evidence failed to show that the payee's performance was induced by reliance on the check. *Id.* at 665 (stating that reliance on the validity of the check "must have been the efficient inducement which moved the party receiving it to part with something of value, including valuable services"). Because performance had already been completed before the check issued, the check was not the inducement by means of which the services were obtained; instead, the check was given to pay a debt that the defendant had already incurred, and "the transaction d[id] not come within the definition of the crime proscribed." *Id.*

**{38}** Based on the foregoing, we conclude that Defendant did not receive anything of value in exchange for issuing the checks, and the laborers/payees did not give their labor in exchange for the check. Instead, the checks were issued in satisfaction of the debt already owed to the laborers/payees by virtue of their work; in essence, the checks were to satisfy a pre-existing debt, and acceptance of the check did not discharge the company's debt to the

employees for wages. Therefore, even viewing the evidence introduced at trial in the light most favorable to conviction, Defendant cannot be liable under the Worthless Check Act.

**{39}** Even though reversal is warranted based on the facts of this case, our opinion should not be interpreted to mean that a defendant who issues a worthless check after receiving goods or services can never be guilty of violating the Worthless Check Act. *See Platt*, 114 N.M. at 722-23, 845 P.2d at 816-17 (holding that in certain circumstances a defendant can be liable under the Worthless Check Act even though the check is issued after the goods have been delivered); *Ledford*, 362 S.E.2d at 134 (affirming the defendant's conviction for issuing a worthless check based upon evidence showing that the goods were given on April 17 and payment was made on April 18 because the exchange constituted a "single contemporaneous transaction" (internal quotation marks and citation omitted)). In *Platt*, the evidence showed that the defendant had paid for flooring materials and services on the day the materials were installed and delivered, January 2. 114 N.M. at 722, 845 P.2d at 816. However, that check bounced and the defendant issued another check on January 16. *Id.* After this check was also dishonored, the defendant was convicted under the Worthless Check Act based upon the latter, January 16 check. *Id.* The defendant argued that he could not be liable under the Worthless Check Act because the check was to pay a pre-existing debt; the carpeting had been installed on January 2, and yet the check was not written until January 16. *Id.* at 722-23, 845 P.2d at 816-17. This Court disagreed and held that even though some of the goods and services were delivered before the check was issued, the facts showed that the "parties intended to have a cash transaction," and there was no evidence indicating that the payee "intended to extend credit to [the] defendant." *Id.* at 723, 845 P.2d at 817.

**{40}** *Platt* does not warrant affirmance in this case because in *Platt* the recipients of the check sought payment on the very day they provided services. *Id.* at 722, 845 P.2d at 816. A second check was issued on January 16 after the first one was dishonored, but there is nothing to suggest that the recipients ever agreed to a delay before being compensated for their work. In contrast, the laborers/payees in this case worked for a week with the expectation that they would have to wait another week before being paid for their labor. Therefore, the work was performed in exchange for a promise to pay, not for the checks themselves, Defendant did not receive anything of value in exchange for the checks, and she cannot be liable under the Worthless Check Act for her actions in this case.

**CONCLUSION**

**{41}** For the foregoing reasons, we reverse Defendant's convictions and remand for proceedings consistent with this opinion.

10

**{42}** IT IS SO ORDERED.

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**ROBERT E. ROBLES, Judge**

**Topic Index for _State v. Cruz_, No. 27,292**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-WC | Worthless Check Offenses |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-EO | Elements of Offense |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-CC | Compensation and Commissions |
| | |
| **IL** | **INDIAN LAW** |
| IL-TC | Tribal Court Jurisdiction |
| IL-TJ | Tribal and State Authority and Jurisdiction |
| | |
| **JD** | **JURISDICTION** |
| JD-PR | Personal |
| JD-SM | Subject Matter |
| JD-VN | Venue |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |