This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.                                                    **NO. 35,563**

**JUAN DIAZ,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina T. Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

**{1}** Defendant appeals his conviction for careless driving, which arose out of an accident in which he rear-ended another vehicle. We issued a notice of proposed summary disposition proposing to affirm, and Defendant has responded with a memorandum in opposition and motion to amend the docketing statement. We have carefully considered the arguments raised in the memorandum as well as the applicable law, and we continue to believe that affirmance is warranted in this case. We therefore affirm Defendant's conviction. In doing so, we deny the motion to amend the docketing statement as unnecessary.

**MOTION TO AMEND**

**{2}** Defendant asks that the following issue be added to his docketing statement: whether the district court abused its discretion in granting the State's mid-trial request for a thirty-day continuance. [MIO 1, 9] In our notice, we stated that this issue was impliedly raised in the docketing statement, and we addressed it. Therefore, while we commend appellate counsel for taking care to ensure that the issue has been explicitly raised, we find it unnecessary to allow amendment of the docketing statement in order to decide the issue. We deny the motion to amend as unnecessary.

**MERITS**

**{3}** The first issue we addressed in the notice was Defendant's challenge to the district court's ruling that allowed the State to amend its witness list after the trial had

already commenced, to add an expert witness. The facts underlying that issue are as follows. The State initially identified three deputies as witnesses (among other witnesses), who would testify as accident reconstructionists and regarding their investigation of the collision. [RP 11-12] The State apparently indicated to Defendant that these deputies would be testifying about data received from a Crash Data Retrieval (CDR) system that had been retrieved from Defendant's vehicle following the collision.[1] Defendant filed a motion in limine directed at several different types of evidence, and in that motion included a challenge to the deputies' testimony concerning the CDR system. [RP 31] Defendant did not specify what the challenge to the testimony was, apart from a general assertion that the testimony would lack an

---

[1] A CDR is also known as an event data recorder (EDR), or a sensing and diagnostic module (SDM), or even a "black box" for motor vehicles; the nomenclature appears to depend on what the vehicle manufacturer has named its particular system. *See Easter v. State*, 115 A.3d 239, 247 (Md. Ct. Spec. App. 2015) (referring to the device as a "black box"); *Commonwealth v. Zimmerman*, 873 N.E.2d 1215, 1217-18 (Mass. App. Ct. 2007) (discussing EDRs); *State v. Shabazz*, 946 A.2d 626, 628 (N.J. Super. Ct. Law Div. 2005) (referring to GM's CDR system); *Bachman v. General Motors Corp.*, 776 N.E.2d 262, 280-83 (Ill. App. Ct. 2002) (analyzing SDMs). A CDR is controlled by a microprocessor, is part of the air-bag deployment system, and provides information concerning the severity of a crash (by measuring the sudden change in speed of the vehicle), the speed of the vehicle at the time of the crash, and the duration of the crash. Marjorie A. Shields, Annotation, *Admissibility of Evidence Taken From Vehicular Event Data Recorders (EDR), Sensing Diagnostic Modules (SDM), or "Black Boxes"*, 40 A.L.R. 6th 595 (2008). In this case, the State wanted to use the evidence to show that Defendant was traveling twenty miles over the speed limit prior to the accident.

adequate foundation. [Id.] Defendant's memorandum in opposition states that this foundational challenge "was not challenging the science underlying the CDR system data" but does not further clarify the basis for the challenge. [MIO 5]

{4} The district court refused to address this part of the motion before trial, and instead it informed Defendant that a *Daubert* motion should have been filed rather than a motion in limine. [Id. 2] Defendant did not file such a motion before trial; however, during the trial, Defendant again objected to the admission of testimony about the CDR data, and the district court agreed with Defendant's argument that expert testimony was necessary on that topic. [Id. 3] Instead of simply excluding the CDR evidence, the district court granted the State a continuance of the trial for thirty days, to allow the State to find an expert to testify about the CDR system and data. [Id.] The State subsequently amended its witness list to add Stan Lundy as an expert in crash reconstruction and CDR systems. [RP 40] This amendment occurred on December 31, 2015, eight days before trial resumed.

{5} Defendant contends that allowing the State to amend its witness list in the middle of trial was an abuse of discretion. Defendant does not claim that he had an inadequate opportunity to interview Mr. Lundy prior to his testimony, or to find an expert of his own who might be able to contradict Mr. Lundy's opinion, or that he in any way was hampered in preparing for Mr. Lundy's testimony and cross-

4

examination. Defendant simply argues that the State violated its obligations under Rules 5-501 and 5-505 NMRA, which require the State to disclose its witnesses in a timely manner and establish a continuing duty of disclosure as new evidence or witnesses come to light. Defendant maintains that, when he filed his motion in limine, the State was put on notice that it would need expert testimony concerning the CDR system, and the State therefore should not have been granted the opportunity to add Mr. Lundy as a new witness. [MIO 6-8]

{6}     As we stated in our notice, and as Defendant acknowledges, we review the district court's action in this matter only for abuse of discretion. *See State v. Griffin*, 1988-NMCA-101, ¶¶ 10-14, 108 N.M. 55, 766 P.2d 315 (finding no abuse of discretion where trial court allowed two witnesses, including one expert, to testify even though they had not been disclosed until the day of trial). Under the circumstances, we cannot find an abuse of discretion here. Although Defendant argues that the State was on notice of the need to procure an expert once he filed his motion in limine, that motion was not granted. The district court instead informed Defendant that he should have filed a *Daubert* motion to challenge admission of the CDR evidence. At that point, therefore, the State had no reason to believe an expert would be needed to support admission of the evidence. It was only after the trial started, and Defendant successfully raised the issue again, that the State was put on notice that

expert testimony was necessary. Given the district court's mid-trial ruling that seemed to contradict its earlier refusal to exclude the evidence, the district court did not abuse its discretion by allowing the State to amend its witness list at that point.

{7} In addition, even if the State had somehow been negligent in failing to procure a CDR expert earlier in the proceedings, the district court still had discretion to allow the State's untimely amendment of the witness list. Our Supreme Court has stated firmly that "the mere showing of violation of a discovery order, without a showing of prejudice, is not grounds for sanctioning a party." *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. The *Harper* Court added that "even when a party has acted with a high degree of culpability" exclusion of key evidence is only proper if "the opposing party suffered tangible prejudice." *Id.* ¶ 19. As we pointed out above, there is no indication that the late disclosure of Mr. Lundy as an expert witness prejudiced Defendant. Defendant attempts to argue that he was prejudiced because the CDR evidence was "the State's strongest evidence of careless driving and speeding." [MIO 8] However, the fact that the district court's action allowed the State an opportunity to strengthen its case is not the type of prejudice contemplated by *Harper*. Instead, prejudice that would justify excluding important evidence occurs if the defendant is hampered in his ability to prepare his case or to offer a defense to the newly-disclosed evidence. *See Harper*, ¶¶ 19, 20 (stating that late discovery does not

6

demonstrate prejudice "unless the evidence is material and the disclosure is so late that it undermines the defendant's preparation for trial). In this case Defendant had time to interview Mr. Lundy before the trial resumed, since he was disclosed as an expert eight days before that resumption. While it is not clear whether Defendant took advantage of that opportunity, it is clear that he has not argued that his preparation for trial was impaired in any way. For this reason also, the district court did not abuse its discretion in allowing the mid-trial amendment of the State's witness list.

{8}	As a corollary to the late-disclosure-of-expert argument, Defendant maintains that the district court abused its discretion in granting the State a thirty-day continuance in which to locate a CDR expert. Again, Defendant recognizes that the grant or denial of a continuance lies within the sound discretion of the trial court. *State v. Salazar*, 2007-NMSC-004, ¶ 10, 141 N.M. 148, 152 P.3d 135. Defendant contends, however, that the district court abused its discretion because the State was at fault in causing the need for the continuance, the continuance was for too long a period of time, and Defendant was prejudiced by the continuance. [MIO 10-12]

{9}	For the same reasons as those we discussed above, we do not agree that the State was at fault; until the district court ruled mid-trial that an expert would be needed to support admission of the CDR evidence, the State did not have a reason to believe that would be true. As for the length of the continuance, the mere fact that the

7

continuance was for thirty days, rather than a shorter period of time, does not establish an abuse of discretion as a matter of law. Defendant has pointed to nothing that happened during those thirty days that might have prejudiced his defense in any legally-cognizable way. His only argument in favor of prejudice is the same one that we rejected above---that the CDR evidence was important evidence for the State, and the delay in the trial allowed the State the opportunity to do what it needed to in order to obtain admission of that evidence. In sum, we do not find an abuse of discretion under the circumstances of this case. *Cf. State v. Anderson*, 1989-NMCA-096, ¶ 9, 110 N.M. 382, 796 P.2d 603 (stating that the decision to either allow the state to cure a disclosure issue by granting a continuance, or instead to proceed with a trial or hearing, "is best left to the discretion of the trial court").

{10}     Defendant next argues that the district court abused its discretion in qualifying Mr. Lundy as an expert capable of testifying about the CDR system and the information obtained from that system in this case. [MIO 12-13] *See State v. McDonald*, 1998-NMSC-034, ¶ 19, 126 N.M. 44, 966 P.2d 752 (stating that "[t]he trial judge has wide discretion to determine whether a witness is qualified to give testimony as an expert . . ."). Defendant points out that, although Mr. Lundy testified that he attended a course on CDR systems, he is not an engineer, does not have any type of scientific degree, and could not explain how the system functions. [Id. 3, 12]

This sketchy summary of Mr. Lundy's testimony does not provide enough information to allow us to find that the district court committed an abuse of discretion in qualifying Mr. Lundy as an expert. Defendant provides no information about how complicated a CDR system is, or about the course Mr. Lundy attended. Perhaps obtaining information from a CDR system is so straightforward that a short course on the subject is sufficient to make a person proficient in that endeavor; or perhaps it is a complicated matter but Mr. Lundy's course was a semester-long, in-depth class consisting of a number of sessions. We simply do not know, and that lack of knowledge does not allow a finding of abuse of discretion.

{11} In addition, although Defendant points out that Mr. Lundy could not explain how the CDR system works, this would appear to be an attack on the science or technology underlying the CDR system; yet Defendant specifically states that he "was not challenging the science underlying the CDR system data . . ." [MIO 5] In the absence of such a challenge, the district court was entitled to assume that the underlying reliability of the CDR system need not be examined and that Mr. Lundy was required only to be qualified to testify about obtaining and interpreting information or results from the CDR system. *See, e.g.*, *State v. Fuentes*, 2010-NMCA-027, ¶ 26, 147 N.M. 761, 228 P.3d 1181 (noting that a trial court has discretionary authority to avoid unnecessary reliability proceedings where the reliability of the

method in question is properly taken for granted).[2] In sum, in the absence of additional information specifically indicating how Mr. Lundy's training and experience was deficient with respect to analyzing CDR readings or information, we decline to hold that the district court abused its discretion in qualifying him as an expert in that field.

{12}     Defendant's final argument is that the State failed to introduce sufficient evidence to prove that the accident occurred in Bernalillo County, New Mexico. [MIO 14] In our notice, we suggested that the district court could have taken judicial notice of the location of the accident, on the basis of evidence introduced at trial such as a diagram of the accident, testimony from investigating officers employed by the Bernalillo County Sheriff's Department, or testimony from the driver of the other vehicle involved in the accident. In response, Defendant forthrightly states that the accident occurred on Broadway Boulevard (a well-known thoroughfare located in Albuquerque and Bernalillo County) and was investigated by the Bernalillo County

[2]While we need not decide the issue in this case, and expressly do not, we note that out-of-jurisdiction case law, at least to the extent our limited research has revealed, is unanimous in accepting CDR or EDR or vehicular "black box" evidence as scientifically or technologically reliable. *See, e.g.*, *Easter v. State*, *supra* note 1, 115 A.3d at 248; *Commonwealth v. Zimmerman*, *supra* note 1, 873 N.E.2d at 1221; *State v. Shabazz*, *supra* note 1, 946 A.2d at 632; *Bachman v. General Motors Corp.*, *supra* note 1, 776 N.E.2d at 283; *see also Matos v. State*, 899 So.2d 403, 407 (Fla. Dist. Ct. App. 2005); *cf. State v. Watts*, 168 So.3d 441, 450-51 (La. Ct. App. 2014) (holding that trial court did not abuse its discretion in qualifying a trooper as an expert in CDR reading).

Sheriff's Department. [MIO 2-3] Defendant also indicates that a witness described the location of the accident, including street names, but argues that the district court did not specifically take judicial notice of the location of the accident. [MIO 4] We continue to believe that enough information was provided to constitute sufficient evidence that the accident in question occurred in Bernalillo County, New Mexico. *See State v. Cruz*, 2010-NMCA-011, ¶ 13, 147 N.M. 753, 228 P.3d 1173 (authorizing the district court to take judicial notice of a generally known location), *rev'd on other grounds*, 2011-NMSC-038, 150 N.M. 548, 263 P.3d 890; *State v. Cutnose*, 1974-NMCA-130, ¶ 59, 87 N.M. 307, 532 P.2d 896 (stating that the Court of Appeals can take judicial notice of geographical facts for purposes of determining jurisdiction); Rule 11-201(C) NMRA (allowing a court to take judicial notice on its own motion).

{13}     Based on the foregoing, we affirm Defendant's conviction for careless driving.

{14}     **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

11

_____

**LINDA M. VANZI, Chief Judge**


_____

**TIMOTHY L. GARCIA, Judge**