This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **No. 31,980**

**RUDY PEREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Jane Shuler Gray, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**ZAMORA, Judge.**

**{1}**     Defendant was convicted of two counts of aggravated battery with a deadly weapon. On appeal, Defendant raises four issues, contending that: (1) his requested instruction on self-defense should have been given, (2) the evidence was insufficient to support his convictions, (3) evidence relating to the use of narcotics was improperly excluded, and (4) the charges should have been dismissed in light of the State's spoliation of evidence. For the reasons that follow, we affirm.

**BACKGROUND**

**{2}**     On the afternoon of July 28, 2010, Defendant sought out Dewayne Bowering at his residence for the specific purpose of initiating a fight. Only moments after entering, Defendant struck both Bowering and Bret Bolch with a short wooden stick or bat-type instrument with which he had armed himself in advance. Bolch sustained relatively superficial injuries; Bowering spent a little over a month in the hospital recovering from the attack.

**{3}**     Defendant claimed that he had previously been threatened by Bowering. In an interview with police, Defendant asserted that three days before the incident at issue they had "gotten into it." Defendant also claimed that he had been warned by an unnamed individual that Bowering was recruiting men to "jump him" at Bowering's residence, where Bowering had stored a baseball bat in the corner, two under the couch and he had a taser. Defendant further claimed that forty-five minutes before the incident at issue, Bowering and three other men had pulled up next to him in a car.

2

When Defendant asked what they wanted, Bowering had vaguely replied, "You'll see." Defendant claimed that he went to Bowering's residence in response to these threats, because he "was not gonna sit there looking over [his] shoulders." Preferring to face danger head-on, and despite his concerns about being outnumbered, Defendant specifically stated that his intention was not to talk, but to fight "one-on-one." By contrast, both Bowering and Bolch testified at trial that they had no dispute with Defendant, and had no idea why Defendant had attacked them.

{4} All witnesses agreed that Bowering was seated on a couch with his back to Defendant when Defendant entered the residence. Bolch was either standing in the kitchen or seated nearby in the kitchen on a stool. However, Defendant claimed that he saw Bowering put something under his leg when he entered, and that Bolch had an unknown object in his hand. Defendant also claimed that Bowering immediately placed a call on his cell phone, saying "He's here; hurry up, get over here!" Bowering allegedly then told Defendant, "You're fixing to find out!" to which Defendant replied, "You think?" Defendant's niece, who had accompanied Defendant to the residence, claimed that Bowering leaned forward as if reaching for something under the couch, at which point Defendant struck Bowering with his bat. Defendant and his niece contended that Bolch then stood up and advanced. Defendant claimed that he struck Bolch with his bat as Bolch was in the act of swinging at him.

3

{5} Bowering and Bolch testified to a different series of events. Bowering denied making any phone call, and testified that Defendant had simply entered the residence, walked straight toward Bowering as he sat on the couch with his back to Defendant and struck him in the face with the bat as he turned to look in Defendant's direction. Bolch similarly testified that he had seen Defendant run into the apartment and strike Bowering with a bat. Defendant then advanced on Bolch and swung at his head, but Bolch blocked the blow with his arm. Defendant then ran out.

**DISCUSSION**

**1.    The Requested Self-Defense Instruction**

{6} At trial Defendant requested that the jury be instructed on self-defense. After argument before the court, the request was denied. Defendant contends that the district court's failure to give his requested instruction was erroneous.

{7} "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted).

{8} Defendant was required to present evidence supporting every element of self-defense in order to warrant the requested jury instructions. *State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162. The elements of self-defense are: "(1) an appearance of immediate danger of death or great bodily harm to the defendant, (2) the defendant was in fact put in fear by the apparent danger, and (3) a

4

reasonable person in the same circumstances would have reacted similarly." *State v. Emmons*, 2007-NMCA-082, ¶ 12, 141 N.M. 875, 161 P.3d 920 (internal quotation marks and citation omitted). The evidence must be viewed in the light most favorable to giving the requested self-defense instructions. *See State v. Ellis*, 2008-NMSC-032, ¶¶ 2, 35, 144 N.M. 253, 186 P.3d 245.

{9}     The district court rejected Defendant's requested instructions on self-defense principally on grounds that Defendant's conduct was, by his own admission, in the nature of a "preemptive strike." We concur.

{10}     It is well-established that self-defense is generally unavailable to a defendant who acted as the aggressor or instigator of the conflict. *State v. Lucero*, 1998-NMSC-044, ¶ 7, 126 N.M. 552, 972 P.2d 1143. While Defendant now suggests in his briefs to the Court that he went to Bowering's residence "to make peace," we find no evidentiary support for this characterization of Defendant's motives. To the contrary, by his own admission Defendant armed himself, entered the residence for the specific purpose of initiating a fight, and attacked both Bowering and Bolch with a deadly weapon. As such, Defendant was the instigator of the conflict. *See, e.g.*, *id.* ¶ 8 (holding that a defendant who followed the victims, drew his weapon, and fired into the air was the instigator of the ensuing gunfight); *Emmons*, 2007-NMCA-082, ¶¶ 12-13 (holding that a defendant who pursued the victims, initiated contact, and threatened them at gunpoint was the instigator, such that his use of deadly force could only be

characterized as offensive, rather than defensive). Defendant's claim that Bowering had threatened him several days previously and forty-five minutes beforehand does not alter our assessment. Insofar as those encounters had concluded, they cannot supply the requisite appearance of immediate danger of death or great bodily harm, particularly in light of Defendant's ensuing conduct. *See, e.g.*, *Lucero*, 1998-NMSC-044, ¶¶ 2-4, 8 (concluding that the defendant's acts of arming himself with a gun, pursuing the victims, drawing the weapon and firing, made him the aggressor, notwithstanding the fact that one of the victims had challenged the defendant and shot at him earlier that day); *Emmons*, 2007-NMCA-082, ¶¶ 3-5, 13 (rejecting a claim that the victims had instigated the assaultive episode, on grounds that they had departed and the initial encounter had concluded before the defendant armed himself, pursued them, forced them off the road, and threatened them with a deadly weapon).

{11}     We understand Defendant to suggest that Bowering and Bolch's actions immediately prior to the attack could be regarded as sufficiently menacing to create an appearance of immediate danger of death or great bodily harm, such that he might not be regarded as the instigator. He urges that the circumstances presented in this case are analogous to the situation presented in *State v. Branchal*, 1984-NMCA-063, 101 N.M. 498, 684 P.2d 1163. We disagree. In *Branchal*, evidence was presented indicating that the defendant had suffered extensive domestic abuse at the victim's hands, who was "belligerent" and "intolerable" when drunk. *Id.* ¶¶ 13, 22. Evidence

6

was also presented that on the specific occasion in question the victim was highly intoxicated, he started a fight with the defendant, and he advanced on her in a threatening way, such that she feared for her life and the lives of her children. *Id.* ¶¶ 9, 14-21, 24. The situation presented in this case is not analogous, even when the evidence is viewed in the light most favorable to the defense. To summarize, after Defendant armed himself with a deadly weapon and specifically sought Bowering out in his own home for the purpose of initiating a fight, Bowering allegedly placed something under his leg, called a third party, commented that Defendant was "fixing to find out" what was up and leaned forward from a seated position on a couch, possibly reaching for some unknown object. Moreover, Defendant approached Bowering from behind while pulling the wooden stick or bat-type instrument from behind Defendant's back and then began hitting Bowering. In light of Defendant's own intentions and conduct, these acts do not transform Bowering into the aggressor, notwithstanding Defendant's subjective concerns about the victims and the context out of which the encounter arose. *See, e.g.*, *Emmons*, 2007-NMCA-082, ¶ 11 (rejecting a claim of self-defense in light of the defendant's own aggressive conduct, premised on the defendant's anxiety about confronting men whom he believed had just committed a felony against him, his unease about being outnumbered in the country at night, and his concern about being unable to see one individual's hands). And while Bolch stood up and allegedly began to swing at Defendant with some unknown object

7

in his hand, he only did so after Defendant had attacked Bowering with the bat. As such, Bolch cannot be regarded as the instigator of the conflict.

{12}     To summarize, insofar as it was Defendant who armed himself with a deadly weapon, entered the victims' residence for the purpose of fighting, and struck the first and only blows, Defendant was unquestionably the aggressor. "This is not defensive, [but] rather, an offensive use of deadly force which is not justified." *Id.* ¶ 13. As such, we conclude that the district court properly denied Defendant's requested instructions on self-defense.

**2.     Sufficiency of the Evidence**

{13}     Pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant challenges the sufficiency of the evidence to support his convictions for two counts of aggravated battery with a deadly weapon.

{14}     "[W]hen reviewing a challenge to the sufficiency of the evidence, we review the evidence introduced at trial to determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Cruz*, 2010-NMCA-011, ¶ 27, 147 N.M. 753, 228 P.3d 1173 (internal quotation marks and citation omitted), *rev'd on other grounds*, 2011-NMSC-038, 150 N.M. 548, 263 P.3d

890. "We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all inferences in favor [thereof]." *Id.*

{15}    The offense of aggravated battery with a deadly weapon is defined as "the unlawful touching or application of force to the person of another with intent to injure that person or another . . . with a deadly weapon[.]" NMSA 1978, § 30-3-5 (A), (C) (1969).

{16}    To support his convictions for aggravated battery with a deadly weapon, the State was required to prove that:

> 1.    [D]efendant touched or applied force to [Bowering and Bolch] by striking [them] with an eighteen (18) inch wooden stick, wrapped in black tape, with a three (3) inch diameter. [D]efendant used . . . an eighteen (18) inch wooden stick, wrapped in black tape, with a three (3) inch diameter. [A]n eighteen (18) inch wooden stick, wrapped in black tape, with a three (3) inch diameter is a deadly weapon only if you find that . . . an eighteen (18) inch wooden stick, wrapped in black tape, with a three (3) inch diameter, when used as a weapon, could cause death or great bodily harm;
>
> 2.    [D]efendant intended to injure [Bowering and Bolch]; and
>
> 3.    This happened in New Mexico on or about the 28th day of July, 2010.

*See* UJI 14-322 NMRA (defining the elements of aggravated battery with a deadly weapon).

{17}    In satisfaction of the foregoing elements, the State presented the testimony of numerous witnesses including Bowering and Bolch, who described the incident on

9

July 28, 2010, in the course of which Defendant entered their residence and struck both of them with what was described as a bat-type object of the aforementioned dimensions. Defendant's niece also testified that Defendant struck the victims with a stick, which she described as fifteen to eighteen inches in length, roughly three inches around, and wrapped in black tape. Defendant's own statement to police was also presented, in the course of which he admitted that he had gone to Bowering's residence for the purpose of fighting, and had struck both Bowering and Bolch with a broomstick wrapped in electrical tape. Defendant also acknowledged that the stick was not a deadly weapon unless he was using it. Evidence was also presented to the effect that Bowering suffered serious injuries which required hospitalization for a period of over a month. This evidence clearly supplied adequate support for the convictions. *See, e.g.*, *State v. Foxen*, 2001-NMCA-061, ¶¶ 3-5, 17, 130 N.M. 670, 29 P.3d 1071 (rejecting a challenge to the sufficiency of the evidence to support a conviction for aggravated battery with a deadly weapon, in light of testimony of the victim and other witnesses that the defendant had aggressively attacked the victim by striking and ultimately stabbing him); and *see generally State v. Neatherlin*, 2007-NMCA-035, ¶ 13, 141 N.M. 328, 154 P.3d 703 (listing a variety of objects that can be found to be deadly weapons, including sticks).

{18}    We understand Defendant to suggest that if the Court were to reweigh the conflicting evidence describing the weapon in this case, we might find that a

reasonable doubt existed with respect to the specific attributes of the stick, particularly in light of inconsistent descriptions of the object and the failure on the part of the police to collect it in the course of the investigation. However, there was substantial concurrence among the various witnesses on this subject; the testimony of any one of them would have been sufficient. *See generally State v. Soliz*, 1969-NMCA-043, ¶ 8, 80 N.M. 297, 454 P.2d 779 ("As a general rule, the testimony of a single witness is sufficient evidence for a conviction."). Ultimately, as a reviewing court, we cannot second-guess the jury's determination. *See State v. Bennett*, 2003-NMCA-147, ¶ 20, 134 N.M. 705, 82 P.3d 72 (recognizing the limited role of the reviewing court relative to the assessment of conflicting evidence).

**3.    Evidence of Narcotics Use**

{19}    Defendant contends that the district court improperly excluded evidence concerning the use of narcotics by one of the victims. The evidence in question appears to concern Bowering's admission to having consumed methamphetamine a few days prior to the incident in question, as well as the assertions of Defendant's niece that Bowering regularly used methamphetamine and had ingested some the previous night. The district court excluded this evidence pursuant to Rule 11-403 NMRA, specifically in light of the absence of any scientific testimony to describe what impact the consumption of methamphetamine so many hours beforehand would have had on Bowering's perceptions or credibility.

11

{20} We review the exclusion of evidence pursuant to Rule 11-403 for abuse of discretion. *See State v. Martinez*, 1999-NMSC-018, ¶ 31, 127 N.M. 207, 979 P.2d 718 ("The [district] court is vested with great discretion in applying Rule 11-403, and it will not be reversed absent an abuse of that discretion." (second alteration, internal quotation marks and citation omitted)).

{21} In light of Defendant's failure to establish either that Bowering was actually under the influence of methamphetamine at the time of the incident, or the effect of his alleged methamphetamine use, the probative value of the evidence in question was only negligible. By contrast, the prejudicial effect of such evidence is clear. *See generally State v. McDonald*, 1998-NMSC-034, ¶ 25, 126 N.M. 44, 966 P.2d 752 (noting "the prejudicial effect inherent in drug-related evidence"). We therefore conclude that the district court acted well within its discretion. *See, e.g., State v. Trujillo*, 2012-NMCA-112, ¶¶ 53-54, 289 P.3d 238, *cert. granted*, 2012-NMCERT-011, 297 P.3d 1227 (holding that evidence of the victim's possible involvement with drugs, either as a user or a seller, was properly excluded on grounds that any probative value was far outweighed by prejudicial effect).

**4.      Spoliation of Evidence**

{22} Finally, Defendant asserts that the charges should have been dismissed in light of the State's spoliation of evidence. He bases this argument on the failure of law

enforcement personnel to retrieve the object with which Defendant struck Bowering and Bolch.

**{23}** There is no suggestion that the stick or bat with which Defendant struck the victims was actually left at the crime scene. To the contrary, it seems to be undisputed that Defendant took the object with him. The police never saw or took possession of it.

**{24}** "It is generally understood that the [s]tate has a duty to preserve evidence obtained during the investigation of a crime." *State v. Pacheco*, 2008-NMCA-131, ¶ 28, 145 N.M. 40, 193 P.3d 587. However, "the failure to gather evidence is not the same as the failure to preserve evidence, and . . . the [s]tate generally has no duty to collect particular evidence[.]" *State v. Ware*, 1994-NMSC-091, ¶ 16, 118 N.M. 319, 881 P.2d 679. While sanctions may be appropriate in cases where police have failed to gather evidence, both the materiality of the evidence and conduct of the investigating officers are critical considerations. *Id.* ¶¶ 23-25. In this context, evidence is material only "if there is a reasonable probability that, had the evidence been [available] to the defense, the result of the proceeding would have been different." *Id.* ¶ 25 (alteration in original) (internal quotation marks and citation omitted). If the evidence is material, sanctions may be appropriate if the failure to collect was done in bad faith, or if the investigating officers were grossly negligent. *Id.* ¶ 26. However,

13

"[w]hen the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate[.]" *Id.*

{25}    Insofar as the evidence was not present at the crime scene, but rather appears to have been in Defendant's possession, we note that it is not clear whether the foregoing principles are applicable to the matter at hand. However, even if we assume that *Ware* applies, neither the requisite materiality nor culpability are apparent. With respect to materiality, we note that Defendant's admitted use of the stick or bat in the course of the attack, together with the various witnesses' substantial agreement concerning the object's attributes, diminish the evidentiary value of the object itself. We fail to see how the collection and preservation of the object could have altered the result of the proceeding. With respect to culpability, Defendant advances no argument that the investigating officers acted in bad faith or were grossly negligent in failing to obtain the object after the incident occurred. Accordingly, we reject Defendant's assertion that the extreme sanction of dismissal was warranted.

**CONCLUSION**

{26}    For the foregoing reasons, we affirm.

{27}    **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**TIMOTHY L. GARCIA, Judge**